774 So.2d 1164 (2000)
STATE of Louisiana, Appellee,
v.
David M. REESE, Appellant.
No. 34,275-KA.
Court of Appeal of Louisiana, Second Circuit.
December 20, 2000.
*1167 Wilson Rambo, Jay Nolen, David M. Reese, Counsel for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, David O'Brian Harkins, Jr., Assistant District Attorney, Counsel for Appellee.
Before NORRIS, C.J., and STEWART and GASKINS, JJ.
NORRIS, Chief Judge.
The defendant, David Reese, appeals his conviction on one count of second degree kidnapping, a violation of La.R.S. 14:44.1, and sentence to ten years at hard labor. For the reasons expressed herein, we affirm.

Factual Background
David Reese was married to Judy Reese in 1990 and divorced in 1995. In the early morning hours of July 13, 1997, Reese called his ex-wife asking her if their twin 12 year old daughters could accompany him to church that day. Judy replied that she would have to wait until later to give him an answer. Shortly thereafter, Reese arrived, unannounced, at Judy's house with his 15 month old baby, met Judy at the front door, and entered. Judy's boyfriend (now husband), Michael Parks, was in the house, having spent the night. After Reese entered the house and began walking down a hallway towards the bedroom, Parks hit him from behind on the shoulder with a three foot hammer handle. Seeing the baby in Reese's arms, Parks disengaged, but Reese nevertheless became infuriated, placed the baby on the floor, grabbed Judy around the neck and forced her into the bathroom at gunpoint, using a gun he had brought. He then ordered Parks to leave, threatening to kill Judy if he did not comply. At some point, Reese's twin daughters, Amber and Ashley, came running out of their bedroom. Reese captured Ashley by her hair and dragged her into the bathroom with him and Judy; Amber evaded capture. Ashley eventually escaped before the police arrived. Reese also threatened to kill himself. The police SWAT team arrived, and after a standoff, Reese surrendered his weapon and released his captives. No one sustained any injuries.
By Bill of Information, Reese was charged with two counts of second degree kidnaping in violation of La. R.S. 14:44.1. On August 4, 1997, after waiving formal arraignment, Reese entered a plea of not guilty. On August 18, 1997, Reese again waived formal arraignment, and substituted a plea of not guilty and not guilty by reason of insanity. On August 21, 1997, Reese filed a Motion for Appointment of Sanity Commission.
On November 3, 1997, the district court ordered the appointment of psychiatrists Dr. Aris Cox and Dr. Frank Weinholt to examine Reese's competency to stand trial and to determine whether Reese could differentiate between right and wrong at the time of the offense.
Dr. Weinholt examined Reese in jail on February 14, 1998, concluding that Reese was competent to stand trial and competent at the commission of the crime. Dr. Cox agreed that Reese was competent to stand trial but opined that he was psychotic at the time of the offense. On July 20, 1998, a third sanity commission member, Dr. L. Saxon Elliott, a clinical psychologist, was appointed to determine whether Reese was competent to stand trial and assist in his defense. Dr. Elliott also concluded that Reese was competent to proceed to trial.
*1168 Noting the differing opinions of the psychiatrists, the district court, in a hearing conducted on February 10, 1999, committed Reese to East Feliciana State Hospital for a further determination of his mental status at the time of offense and ability to stand trial. The hospital's staff ultimately found Reese competent to stand trial; Reese did not dispute this finding, but on August 12, 1999 requested a re-examination by the Sanity Commission hearing to determine whether he was legally capable to distinguish between right and wrong at the time of the offense. The district court granted this motion and set a hearing date.
On January 3, 2000, Reese, through counsel, informed the court that he desired to waive his right to a jury trial. The court then advised the defendant of his right to, the benefits of, and the procedures connected with a jury. After being so advised, Reese maintained his desire to waive trial by jury. The state also agreed to proceed to trial on only one count of the Bill of Information.
Thereafter, trial began, and after hearing the testimony offered by both sides, the court rejected Reese's sanity defense, finding that Reese was not insane at the commission of the offense and also found Reese guilty of second degree kidnapping. A pre-sentence investigation was ordered by the court prior to sentencing.
On February 17, 2000, the trial court sentenced Reese to ten years at hard labor, with the first two years to be served without benefit of probation, parole, or suspension of sentence. Defense counsel made an oral motion for reconsideration, which was denied. This appeal followed.

DiscussionCompetency to Stand Trial
By his first assignment of error, Reese contends that the district court erred in finding him competent to stand trial. Interestingly, however, Reese does not brief this issue, rather arguing in brief that the trial court erred in rejecting his insanity defense, a completely different basis for appeal than that assigned as error.
Typically, a mere statement of an assignment of error in a brief does not constitute briefing of the assignment, and as such, the assignment is deemed abandoned. State v. Toney, 26,711 (La.App.2d Cir.3/1/95), 651 So.2d 387; State v. Williams, 632 So.2d 351 (La.App. 1st Cir. 1993), writ denied, 94-1009 (La.9/2/94), 643 So.2d 139. Moreover, a new basis for an objection cannot be raised for the first time on appeal. State v. Cressy, 440 So.2d 141 (La.1983); State v. O'Neal, 501 So.2d 920, 924 (La.App. 2d Cir.), writ denied, 505 So.2d 1139 (1987); La.C.Cr.P. art. 841.
In the present case, however, although the stated assignment of error is not argued, La.C.Cr.P. art. 642 mandates that even in a case where a defendant does not object to any further proceedings, the issue of his mental capacity to proceed must be resolved before prosecution may continue. State v. Carney, 25,518 (La.App.2d Cir.10/13/95), 663 So.2d 470. This is because a defendant's mental capacity to proceed may be raised at any time and once raised, no further steps in the prosecution, except the institution of prosecution, shall be taken until the court, in a specific finding of fact, determines that the defendant has the mental capacity to proceed. La.C.Cr.P art. 642; State v. Nomey, 613 So.2d 157, 161 (La.1993); State v. Carney, 25,518 (La.App.2d Cir.10/13/95), 663 So.2d 470. Pursuant to La.C.Cr.P. art. 647, this determination shall be made by the court in a contradictory hearing. Accordingly, the record must reflect that the trial court made a determination of whether or not reasonable grounds exist to doubt the defendant's capacity to proceed. La.C.Cr.P. art. 642; Carney, supra.
In the present case, the record of the August 12, 1999 hearing indicates that the court reviewed the reports from the sanity commission as well as the staff of East Feliciana Hospital, all concluding that Reese was competent to stand trial. The defense did not object to this information. The court, considering this information, found that Reese was competent to assist *1169 counsel. The defense did not object to this finding, and, as a practical matter, does not raise the issue on appeal. Thereafter, the court allowed Reese to enter a plea of not guilty and not guilty by reason of insanity and granted Reese's motion to be reexamined solely on the issue of capacity at the time of the offense. Although La. C.Cr.P. mandates a contradictory hearing, there is no prohibition against waiver of a full hearing or stipulation, as in this case, to submission on the competency issue based on uncontroverted doctor's reports. State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991); State v. Lott, 27,849 (La.App.2d Cir.4/3/96), 671 So.2d 1182. As such, the trial court was not manifestly erroneous in its specific finding that Reese was competent to stand trial.
In brief, Reese contends that no rational trier of fact could have found that he failed to carry his burden to prove, by a preponderance of the evidence, that he was incapable of distinguishing between right and wrong at the time of the crime. As such, he urges that the trial court was manifestly erroneous by rejecting his insanity defense.
If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility. La. R.S. 14:14; State v. Roy, 395 So.2d 664 (La.1981). A defendant is presumed sane and the state is not required to prove sanity. La. R.S. 15:432. Therefore, a defendant has the burden of establishing the defense of insanity at the time of the offense by a preponderance of the evidence. La. C.Cr.P. art. 652.
On appeal, the relevant inquiry is whether, under the facts and circumstances of this case, any rational fact-finder viewing the evidence in the light most favorable to the prosecution could conclude, beyond a reasonable doubt, that Reese failed to prove by a preponderance of the evidence that he was insane at the time he committed the offense. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Armstrong, 94-2950 (La.4/8/96), 671 So.2d 307; State v. Silman, 95-0154 (La.11/27/95), 663 So.2d 27; State v. Odom, 33,340 (La.App. 2d Cir.5/10/00), 760 So.2d 576; State v. Sepulvado, 26,948 (La.App.2d Cir.5/10/95), 655 So.2d 623, writ denied, 95-1437 (La.11/13/95), 662 So.2d 465; State v. Foster, 26,143 (La.App.2d Cir.12/9/94), 647 So.2d 1224; State v. Widenhouse, 582 So.2d 1374 (La.App. 2d Cir.1991), writ denied, 586 So.2d 567 (La.1991), cert. denied, 503 U.S. 910, 112 S.Ct. 1274, 117 L.Ed.2d 500 (1992).
Determination of sanity is a factual issue. State v. Sepulvado, supra. Accordingly, a determination of the weight of evidence is a question of fact which rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. State v. Horne, 28,327 (La.App.2d Cir.8/21/96), 679 So.2d 953, writ denied, 96-2345 (La.2/21/97), 688 So.2d 521. A jury may accept or reject the opinion expressed by a medical expert. State v. Silman, supra. The importance placed upon such testimony is largely dependent upon the expert's qualifications and the facts that form the basis of his opinion. Id.
In the present case, three experts offered their assessment of Reese's mental condition at the time of the offense. A psychiatrist, Dr. Weinholt, and a clinical psychologist, Dr. Elliott, testified that based on their examinations Reese was sane. Dr. Cox, a psychiatrist who treated Reese in the years prior to the offense, disagreed with the findings of the other doctors, opining that Reese was psychotic at the time of the offense, and that Reese's behavior was attributable to his bipolar affective disorder complicated by extensive substance abuse. In light of this conflicting expert testimony, Reese suggests that the inability of the three doctors to agree *1170 on his state of mind at the time of the offense proves that he met his burden of proof by a preponderance of the evidence.
Weighing the totality of the record evidence, we find that a fact finder could make a rational determination that Reese failed to prove by a preponderance of the evidence that he was not capable of distinguishing between right and wrong at the time of the offense. Drs. Weinholt and Elliott testified that Reese's decision making and level of awareness before, during, and after the offense do not indicate that Reese was legally insane. In contrast, Dr. Cox, although opining that Reese was unable to distinguish between right and wrong at the time of the offense, admitted that his opinion was premised on Reese's history of mental illness. Notably, Dr. Cox could not point to any incident indicating that Reese was delusional or experiencing hallucinations. As such, the trial court found Drs. Weinholt's and Elliot's testimony more credible, a reasonable decision based on the record.
This conclusion was further supported by the additional witnesses called by the state. Sergeant Gary Aldridge of the West Monroe Police Department, the first officer on the scene, testified that Reese was completely aware of his surroundings, and even made requests for several people to talk with during the standoff. Sergeant Michael Robertson of the West Monroe PD, who took Reese's statement after his arrest, testified that Reese understood his rights as they had been communicated, and that Reese appeared to understand that he was signing a waiver form. Judy Parks, Reese's hostage, testified that at some point during the siege Reese asked her to speak to the judge on his behalf to lessen his penalty, thus indicating an awareness that what he was doing was wrong and that he would be punished. He also vocalized the thought of committing suicide but decided that it would devastate his daughters. Michael Parks likewise testified that Reese recognized him, appeared to be aware of his surroundings, and had a clear understanding of what he was doing.
It is well-settled that while the trial court may receive expert medical testimony on point, the ultimate decision of competency to stand trial is for the court alone, La. C.Cr.P. art. 647; Rogers, 419 So.2d at 843; State v. Edwards, 406 So.2d 1331, 1342 (La.1981), and will be reversed only if it is clearly erroneous. State v. Howard, 98-0064 (La.4/23/99), 751 So.2d 783, 792; State v. Brogdon, 426 So.2d 158, 167 (La.1983). On the showing made, the trial judge did not err in determining Reese mentally competent to stand trial. This assignment lacks merit.

Sufficiency of the Evidence
By his second assignment of error, Reese suggests that there was insufficient evidence to sustain a conviction for second degree kidnapping. He does not, however, specify which element of the offense the state did not prove.
The state must prove beyond a reasonable doubt that the defendant committed the criminal offense of second degree kidnapping. La. R.S. 14:44.1 provides, inter alia:
A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:
* * *
(5) imprisoned or kidnapped when the offender is armed with a dangerous weapon.
B. For the purposes of this Section, kidnapping is:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person.
*1171 The state proved beyond a reasonable doubt the offense of second degree kidnapping. The victim, Judy Parks, Reese's ex-wife, testified that he forced her into, and then confined her in the bathroom of her home and held her hostage there at gunpoint. Michael Parks testified that Reese restrained Judy with his arm, held a gun on her, forced her into the bathroom, ordered her to sit on the floor of the bathroom, and refused to release her. Sergeant Aldridge's testimony corroborated Park's recollection. Thus, when viewing this evidence in the light most favorable to the state, Jackson, supra, a rational fact finder could conclude based on this testimony that the defendant committed every element of the offense of second degree kidnapping. See, e.g., State v. Robinson, 32,794 (La.App. 2d Cir. 3/1/00), 754 So.2d 311, 319; State v. Steward, 95-1693 (La. App.1st Cir. 9/27/95), 681 So.2d 1007 (second-degree kidnapping statute does not require that distance traveled during forcible seizure be any particular distance); State v. Arbuthnot, 625 So.2d 1377 (La. App. 1st Cir.1993)(terms "imprison" and "confine" are synonymous). This assignment has no merit.

Excessive Sentence
In the remaining assignments of error in his brief filed by counsel, Reese contends that his ten year sentence at hard labor is excessive and that the trial court failed to comply with La. C.Cr.P. 894.1. Specifically, Reese argues that under the circumstances, his punishment is too severe. Reese's counsel made an oral motion for reconsideration at the time of sentencing, which was denied.[1]
The test imposed by the reviewing court in determining whether a sentence is constitutionally excessive is two-pronged. First the record must show adequate consideration of the criteria set forth in La. C.Cr.P. art 894.1. Secondly, the reviewing court must consider whether the sentence is too severe given the circumstances of the case and the background of the defendant. State v. Bradford, 29,519 (La. App.2d Cir.4/2/97), 691 So.2d 864.
Pursuant to La. C.Cr.P. art. 894.1C, the court shall state for the record the considerations taken into account and the factual basis in imposing the sentence. The articulation of the factual basis for a sentence is the goal of La. C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C.Cr.P. art. 894.1; State v. Lanclos, 419 So.2d 475 (La.1982).
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, supra; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1143 (La.1988). There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392; State v. Callahan, 29,351 (La.App.2d Cir.2/26/97), 690 So.2d 864, writ denied, 97-0705 (La.9/26/97), 701 So.2d 979. A sentence violates La. Const. art. 1, § 20, if it is *1172 grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra. A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, this court will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345.
For the instant offense, La. R.S. 14:44.1 sets forth the punishment as:
Whoever commits the crime of second degree kidnapping shall be imprisoned at hard labor for not less than five nor more than forty years. At least two years of the sentence imposed shall be without benefit of parole, probation, or suspension of sentence.
Reese was given a sentence of ten years after being found guilty of second degree kidnapping. The trial court judge reviewed and considered the contents of the PSI and noted the pertinent factors of art. 894.1 in arriving at the appropriate sentence for this defendant. The trial court found that this conviction was one of many breaches of the law in Reese's past including numerous motor vehicle offenses, misdemeanor worthless check offenses in 1984 and 1986, simple battery, three DWI convictions, and an attempted possession of marijuana conviction. The court acknowledged that Reese had a history of mental illness that was perhaps hereditary, but that any lesser sentence would deprecate the seriousness of the crime. As such, we have reviewed the entire record and find that the trial court did not abuse its discretion in imposing the sentence within the statutory limits of La. R.S. 14:44.1. We also note that because the state dismissed the second count of kidnapping, Reese benefitted from a substantial reduction in penalty exposure, although the evidence would easily support a conviction on that count. Further, a ten year sentence for forcible kidnapping and endangering, at gunpoint, of Reese's ex-wife and minor child, where the incident began with a 15 month old child in his arms and ended with a SWAT team being called to the scene, does not shock our sense of justice. Reese's claim of excessiveness of sentence therefore has no merit.

Pro Se Assignments
In a pro se brief, which Reese untimely filed after the briefs of counsel, Reese also challenges the sufficiency of the evidence; for the reasons expressed above, that assignment has no merit. In addition, Reese advances three new assignments of error: that the trial court erred by not admitting the report of Helen Baird; that his initial statements to the West Monroe Police were not given freely and voluntarily; and claiming ineffectiveness of counsel.

Baird Report
Reese contends that the trial court erred by excluding from evidence what he characterizes as a medical report from Helen Baird, the District Forensic Coordinator of the Feliciana Forensic Facility. This report, Reese contends, concludes that his conduct was attributable to "chemical toxic black-out, due to too much medication," and as such, directly impacts his insanity defense.
After reviewing the record, however, we disagree. Although in brief Reese alleges that on October 13, 1999, the trial court "dismissed" this report from evidence, the record and court minutes are devoid of any such hearing or action by the court on that date; additionally, no objection is in the record to the trial court's alleged refusal to admit it into evidence. Therefore, there is no way for us to evaluate his assigned error. La. C.Cr.P. art. 841(an error cannot be considered on appeal unless an *1173 objection was made at the time of its occurrence); State v. Arvie, 505 So.2d 44 (La.1987). Notwithstanding Reese's claim in brief, the record is devoid of any further mention of this report until Reese's sentencing hearing where, for the first time, he sought to have it included at sentencing. In fact, he admitted as much:
By Reese:
[B]ut you know the records I tried to get the year before the trial and it showed up five minutes during the recess that you allowed us at trial. And I didn't get time to go through it. And he didn't go through it to bring out that I was sick. (Sentencing Hearing pp. 18-19).
By the Court:
The court, sir, ordered reports made, interviews had and all that to get some current information on you with a request that the court be given information about your psychiatric condition at the time of the offense. Based upon those reports the court has made a finding and this stack of information doesn't change the court's finding that you were insane (sic). You knew right from wrong at the time of the offense. And the trial testimony supports that finding that you knew right from wrong ... I'm not changing my mind about that based on what I've read. However, having read this stuff does help from the standpoint of mitigation which is what we're dealing with right now. (Sentencing Hearing pp. 19-20).
New evidence can only be raised in a timely motion for new trial or PCR application alleging ineffective assistance of counsel. La. C.Cr.P. arts. 851(3), 854, 930.2. This assignment of error, therefore, is without merit.

Voluntariness of Statement Made to the Police
Reese also suggests in his pro se brief that his statement made to officers of the West Monroe PD subsequent to his arrest was not free and voluntary because the recording officer, Detective Michael Robertson, failed to take note of the fact that he was on medication, and this officer failed to follow established procedures in taking statements. We disagree.
The trial court heard and apparently believed the testimony of Detective Robertson who testified that Reese was not apparently on medication, and Reese never told anyone that he was on medication. In addition, Detective Robertson testified that Reese was advised of his rights as a defendant, appeared to understand them, and waived them, electing to make a recorded statement which was taken following departmental guidelines. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied, 605 So.2d 1089 (1992). As such, this assignment has no merit.

Ineffective Assistance of Counsel
Finally, Reese contends that the actions and omissions on the part of defense counsel prejudiced the outcome of his trial. Generally, a claim of ineffective assistance of counsel is more properly raised in a timely PCR application rather than on direct appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La.C.Cr.P. art 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Green, 27,652 (La.App. 2d Cir.1/24/96), 666 So.2d 1302, writ denied, 97-0504 (La.10/31/97), 703 So.2d 14. When the record is sufficient, however, in the interest of judicial economy, the court may consider the claim. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Willars, 27,394 (La. App. 2d Cir. 9/27/95), 661 So.2d 673.
A claim of ineffective assistance of counsel requires a showing that the defense counsel failed to perform and this failure prejudiced the defendant. The *1174 test, as set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, (1984), requires that,
A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components. First, the defendant must show that counsel's performance was deficient ... Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
State v. Myers, 583 So.2d 67 (La.App. 2d Cir.1991), writ denied, 585 So.2d 576, (La. 1991), citing, Strickland v. Washington, supra.
In this case, defense counsel Jay Nolen filed a hand-written motion to withdraw as defense counsel prior to the trial, but there is no disposition of that motion or evidence that it was withdrawn in the record. Despite the apparent pendency of this motion, Reese never petitioned the court to have Nolen removed from the case or objected to his representation at trial. On this record, therefore, it is impossible to determine whether the parties reconciled any difference or whether Reese's defense was prejudiced at all as required by Strickland, supra, and its progeny.
Likewise, Reese has not specifically stated that evidence was made available to counsel in time enough for trial, and counsel, upon receipt of the information, refused to present the evidence. Appellate review of ineffective assistance claims is best made where the record contains some evidence pertaining to the claim taken in district court; the current record is insufficient. State v. Green, supra; State v. Lemon, 29,587 (La.App.2d Cir.8/20/97), 698 So.2d 1057. Accordingly, this assignment has no merit.

Error Patent Review
Our review of the record reflects that the judgment is in technical error because it recites that the jury found Reese guilty on two counts of second degree kidnapping, while the transcript and court minutes indicate that the district court judge found him guilty on one count. Any discrepancy between judgment and transcript should be resolved in favor of the actual proceedings reflected in the transcript. State v. Sebastien, 31,750 (La. App. 2d Cir. 3/31/99), 730 So.2d 1040, writ denied, 99-1426 (La.10/29/99, 748 So.2d 1157). The written judgment is amended accordingly.

Conclusion
The written judgment of the district court is amended to reflect that the defendant, Reese, was convicted by a judge, of one count of second degree kidnapping, in violation of La. R.S. 14:44.1.
As amended, the conviction and sentence are AFFIRMED.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] The transcript included in the record lacks this motion; as such, the record indicates no specific ground upon which a motion to reconsider sentence may be based, nor was a written motion to reconsider sentence filed. Under these circumstances, typically, review of these errors is relegated to a review of the sentence for constitutional excessiveness. La. C.Cr.P. art. 881.1 D; State v. Mims, 619 So.2d 1059 (La.1993); State v. Thompson, 33,204 (La.App. 2d Cir. 3/1/00), 754 So.2d 412, 418. In an overabundance of caution, however, we have fully reviewed the sentence for excessiveness in light of La. C.Cr.P. art. 894.1, although Reese may have waived this right.