843 So.2d 1268 (2003)
STATE of Louisiana
v.
Carl Bowman McLEOD.
No. 03-50.
Court of Appeal of Louisiana, Third Circuit.
April 30, 2003.
*1269 J. Phillip Haney, District Attorney, New Iberia, LA, and Thomas C. Senette, Assistant District Attorney, Franklin, LA, for Appellee, State of Louisiana.
G. Paul Marx, Attorney at Law, Lafayette, LA, for Defendant-Appellant, Carl Bowman McLeod.
Court composed of NED E. DOUCET JR., Chief Judge, JOHN D. SAUNDERS, and JIMMIE C. PETERS, Judges.
NED E. DOUCET JR., Chief Judge.
Defendant, Carl Bowman, was charged with possession of cocaine, a violation of La.R.S. 40:967. At a hearing held on November 29, 1999, the trial court denied Defendant's motion to suppress. On December 6, 1999, jury selection began; the next day the trial jury found Defendant guilty as charged. Subsequently, on December 14, 1999, the court sentenced Defendant to five years at hard labor.
Subsequently, an appeal was granted, but, was never lodged. On November 8, 2001, in an unpublished writ bearing docket number 01-703, this court granted Defendant's writ in part and remanded the case for determination of the appeal's status. On September 11, 2002, the trial court issued an order clarifying Defendant's appellate rights.
Defendant originally appealed to this court, asserting three assignments of error through counsel. Subsequently, Defendant filed a pro se brief asserting seven additional assignments of error. To avoid confusion, we have broken this opinion into two sections: (1) Initial Assignments (those assigned by counsel) and (2) Pro Se Assignments. We have addressed the respective assignments under the applicable section.

FACTS:
In Jeanerette, Louisiana, acting in conjunction with police, informant Ulysses "Teddy" Spencer, arranged to "rent" Defendant's vehicle in exchange for crack cocaine. On July 24, 1998, police outfitted Spencer with a concealed audio transmitter and supplied him with a "twenty," i.e., approximately twenty dollars worth of crack cocaine to make the transaction. Spencer then entered Defendant's residence with the crack cocaine. The officers' reception of Spencer's audio transmission was poor, but, within a few *1270 minutes of Spencer's entry, upon hearing references to "twenty," they elected to enter Defendant's residence.
Upon entry, the officers observed the informant sitting on a sofa in the living room. Defendant was in the kitchen, with a piece of crack in one hand and a crack pipe in the other.

ERRORS PATENT:
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by the court for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

SECTION 1: INITIAL ASSIGNMENTS

ASSIGNMENT OF ERROR NO. 2:
Defendant's second error assigned shall be addressed first, as Defendant attacks the sufficiency of the evidence adduced against him at trial. As recognized in State v. Hearold, 603 So.2d 731 (La. 1992), a finding that the evidence was insufficient would require an acquittal; therefore, sufficiency claims should be addressed at the outset.
This court has previously explained the analysis for sufficiency claims:
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La. 1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, 436 So.2d 559 (citing State v. Richardson, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.
State v. Kennerson, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.
As noted earlier, the State charged Defendant with possession of cocaine, a violation of La.R.S. 40:967. That statute states, in pertinent part:
C. Possession. It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule II unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner, as provided in R.S. 40:978 while acting in the course of his professional practice, or except as otherwise authorized by this Part.
Schedule II lists cocaine as a controlled dangerous substance. La.R.S. 40:964.
The basis of Defendant's appellate argument is somewhat unclear. He argues:
That there was crack in the house is beyond dispute, but of course it was put there by Jeanerette police. There is no evidence of any other crack, only that delivered by the police.

* * *
In this case the police rushed in at such a frantic and dramatic pace that McLeod may have simply been startled into picking up cocaine and paraphernalia that the confidential informant had simply thrown on the kitchen counter. *1271 There was no evidence in this case to suggest that McLeod had control or possession of the stuff until that instant.
Thus, he does not dispute being in actual, physical possession of the crack when police entered the residence. He does not appear to suggest that he came into possession through any sort of mistake of fact. At best, his present argument seems to suggest entrapment issues, possibly lack of intent. The State's brief includes a discussion of entrapment. However, Defendant specifically eschewed an entrapment defense before trial. At the close of trial, Defendant's trial counsel argued credibility and chain of custody issues, not mistake of fact or intent. Thus, the issue of possible entrapment is not properly before this court.
Regarding intent, Defendant's language suggests the police informant could have thrown the cocaine and pipe onto the kitchen counter, and that, Defendant merely picked them up in surprise. However, the testimony of Officer Jeff Matthews established that Defendant was ten to fifteen feet away from the informant. Defendant was in the kitchen area, while the informant sat on a sofa in the front room. Apparently, both men were visible to Matthews when he made entry into the residence. The testimony of the other two arresting officers, Murray Sheppard and Chief Mannie Mendoza, generally corroborated Matthews's recollection of the scene.
Thus, there is no question, Defendant physically possessed the cocaine. Defendant contests the intent element with his argument that he merely picked up the rock of crack and the crack-pipe, because he was startled by the officers' entry. We find that, considering the factual scenario of the case, this is not a plausible explanation of his possession and we conclude the jury was reasonable in rejecting such a theory.
Further, the scene recounted by Matthews, indicated Defendant possessed the cocaine intentionally. He was at the kitchen counter with crack in one hand and a crack-pipe in the other, with a knife (we note the knife did not test positive for cocaine) and "crumbs" of cocaine on the counter.
Thus, pursuant to Jackson and its progeny, we are unable to say the jury erred in finding him guilty.
We will now proceed to the remaining assignments filed by counsel.

ASSIGNMENT OF ERROR NO. 1:
In his first error assigned, Defendant argues the lower court erred by refusing to suppress the physical evidence in this case. Defendant argues the evidence was seized pursuant to a defective warrant.
According to Defendant, the police allegations in support of the warrant were overly vague, stating only that "contraband" and "paraphernalia" would be found at Defendant's residence. Defendant implies that the police should have specified the types of contraband and paraphernalia they expected to find. Also, he complains the first page of the warrant named a different residence, of a person other than Defendant, to be searched.
Defendant argues a proper review should be based upon a "totality of the circumstances" approach. This is correct, as the supreme court has explained:
An issuing magistrate must make a practical, common sense decision whether, given all of the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place. State v. Byrd, 568 So.2d 554, 559 (La.1990). This affidavit must contain, within its four corners, the facts establishing the existence of probable cause for the warrant. *1272 State v. Duncan, 420 So.2d 1105 (La.1982); State v. Wells, 253 La. 925, 221 So.2d 50 (1969). In Wells, the source of the "four corners" doctrine" [sic] in this state, this Court noted that Article 162 required that the facts establishing probable cause be recited in the affidavit because the judge, not the affiant, is the one who must be satisfied as to the existence of probable cause. LA. CODE EVID. ANN. art. 703(D) states that when evidence is seized pursuant to a search warrant, the defendant bears the burden of proof at a trial on his motion to suppress that evidence. The task of a reviewing court is simply to insure that under the totality of the circumstances the issuing magistrate had a "substantial basis" for concluding that probable cause existed. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Accordingly, in [State v.] Rodrigue, [437 So.2d 830 (La. 1983)], we stated, "The magistrate's determination of probable cause, prior to issuance of a search warrant, is entitled to significant deference by the reviewing court and marginal cases should be resolved in favor of finding the magistrate's assessment to be reasonable." Rodrigue, 437 So.2d at 833. Moreover, if the magistrate finds the affidavit sufficiently detailed and reliable to show probable cause, reviewing courts should interpret the affidavit in a realistic and common sense fashion, aware that it is normally prepared by non-lawyer police officers in the midst and haste of a criminal investigation. Within these guidelines, courts should strive to uphold warrants to encourage their use by police officers. State v. Jenkins, XXXX-XXXX (La.6/22/01), 790 So.2d 626 (citing United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)); State v. Loera, 530 So.2d 1271, 1278 (La.App. 2 Cir.1988), writ denied, 536 So.2d 1252 (La.1989).
State v. Green, 02-1022, pp. 7-8 (La.12/4/02), 831 So.2d 962, 969.
In the present case, the supporting affidavit stated the following information:
ON JULY 22, 1998, I, (AFFIANT) DETECTIVE MURRAY SHEPPARD OF THE JEANERETTE CITY POLICE DEPARTMENT CONDUCTED A NARCOTICS INVESTIGATION AT THE RESIDENCE OF CARL B. MCLEOD III WHO RESIDES AT 600 FRANK STREET. AFFIANT ALONG WITH OTHER MEMBER OF THE JEANERETTE CITY POLICE DEPARTMENT HAS BEEN RECEIVING INFORMATION THAT MCLEOD HAVE (SIC) BEEN HAVING HEAVY TRAFFIC AT HIS RESIDENCE IN (SIC) WHICH IS CONSISTENT WITH DRUG TRAFFIC. AFFIANT RECEIVED INFORMATION THAT MCLEOD HAS BEEN RENT [SIC] HIS VEHICLE OUT FOR NARCOTICS AND THIS INFORMATION WAS COLLABORATING. [SIC] ON THIS SAME DATE APPROXIMATELY 0115 HRS. AFFIANT ALONG WITH COOPERATING SOURCE MADE CONTACT WITH THE RESIDENCE OF CARL B. MCLEOD III IN WHICH A MALE SUBJECT ANSWER [SIC] THE TELEPHONE WHO ADVISED U.S. THAT MCLEOD WAS AT THE RESIDENCE, BUT THE JEEP WAS ALREADY RENTED OUT FOR COCAINE. AFFIANT AND SOURCE CONTACTED MCLEOD HOUSE AT 1835 HRS. IN WHICH HE (MCLEOD) ANSWER THE TELEPHONE. A CONVERSATION WAS ENSUED [SIC] BY SOURCE AND MCLEOD IN REFERENCE TO THE VEHICLE AND GIVING HIM COCAINE FOR *1273 THE RENTAL OF VEHICLE. THIS SOURCE HAS BEEN PROVEN RELIABLE IN THE PAST AND HAVE HELP [SIC] AFFIANT MAKE SEVERAL NARCOTICS ARREST AND SEIZURES. I, (AFFIANT) DETECTIVE MURRAY SHEPPARD OF THE JEANERETTE CITY POLICE DEPARTMENT ASKS [SIC] THAT THIS SEARCH WARRANT BE SIGNED FOR THE RESIDENCE OF 600 FRANK STREET.
At the close of the suppression hearing, the trial court made the following comments in reaching its decision:
BY THE COURT:
To what Mr. Duhe just said, I would add that the primary purpose of the search warrant is a requirement for a review by a magistrate before anyone goes into a home. We had a review by a magistrate here. The information was presented to Judge Wattigny. He did not catch an inconsistency in the paperwork, but that was reviewed again prior to the search warrant being issued. By phone the correct information was supplied to him and he approved it. So we truly, in essence, had the magistrate review. If there is an objection to some of the language used, it would only be effective if the language didn't convey the basic information and, to my knowledge, it does convey the basic information.
Exigent circumstances, as Mr. Duhe has pointed out, is not relevant to this search warrant situation. The exigent circumstance, that turn, [sic] comes into effect in other circumstances.
Entrapment is for the trial. A lot of your argument is for the trial. Somebody might thinkyou know, the jury could well think that there are other problems here, but the problems that are pertinent for this motion today are the validity of the signature, and we've had Judge Wattigny identify his signature. He has identified his initials, has described when he put them on, and has described the fact that he did give an oral, by telephone, approval of the change right after he heard about it and it was apparently prior to the execution of the warrant.
So I would say that the basic principles of a search warrant, that is, a magistrate review prior to search, have complied with and that there is no cause to suppress the fruits of that warrant. There may be other problems for another day. That's not before us. I will deny the motion to suppress fruits of that warrant.
In regard to Defendant's vagueness argument, the Fourth Circuit, when confronted with a similar situation, observed the following:
In the present case the tipster gave specifics about the drug activity. The caller provided a specific address and apartment number. The caller had seen a lot of activity both at day and night. The tipster described the person involved in drug activity as a black male, being the age of about fifty, who was known as "Plat." Officer Lainez's observations corroborated the caller's allegations. The person answering the door fit the description of a black male who was about the age of fifty. The officer saw several people entering and leaving the apartment in a suspicious manner after brief stays. He saw a female reaching for money. The officer stated that the subjects did not appear to be social visitors or "to be in an official capacity such as LP & L or a service person or something who had an official reason to be there." The officer testified that he previously had investigated over 200 drug transactions. From his *1274 past experience the officer believed the defendant was engaging in narcotic transactions. The officer's inferences from the facts at hand were reasonable. Reviewing the totality of the circumstances, the issuing magistrate had a substantial basis for finding probable cause to issue a warrant to search Martin's residence. The trial court properly denied Martin's motion to suppress evidence and motion for new trial....
State v. Martin, 97-2904, pp. 8-9 (La.App. 4 Cir. 2/24/99), 730 So.2d 1029, 1033, writ denied, 99-874 (La.10/1/99), 747 So.2d 1136 (Emphasis ours).
We find the information police supplied to the issuing judge in this case was at least as detailed as that in Martin, if not more so. As the State points out, the supporting affidavit clearly refers to cocaine. Thus, in light of Green and Martin, we find Defendant's allegations of vagueness lack merit.
Regarding his argument that the incorrect address on the warrant should invalidate the instrument, we observe that an incorrect address is not fatal to a search warrant. As another court has explained:
A search warrant must particularly describe the place to be searched. U.S. Constitution, Amendment IV; Louisiana Constitution of 1974, Article I § 5; La. C.Cr.P. Article 162. The description in a search warrant application is sufficient if the place to be searched is described in sufficient detail to enable the officers to locate it with reasonable certainty and with the reasonable probability that the police will not search the wrong premises. State v. Korman, 379 So.2d 1061 (La.1980); State v. Petta, 354 So.2d 563 (La.1978); State v. Cobbs, 350 So.2d 168 (La.1977). A discrepancy between the location described in the warrant and the location searched will generally not invalidate the search warrant. State v. Korman, supra. However, if police officers knowingly search entirely different premises than that described in the warrant, the evidence seized will be suppressed because the warrant did not particularly describe the place to be searched. State v. Manzella, 392 So.2d 403 (La.1980).
In State v. Johnson, 534 So.2d 1322 (La.App. 4 Cir.1988), a search warrant authorized the search of 70001 Bundy Road, Apartment E-15. The location actually searched was 7001 Bundy Road, Apartment E-15. We upheld the search, finding "there was very little, if any, possibility that the wrong premises would be searched. The typographical error of an additional `0' in the address did not invalidate the warrant." Johnson, at 1326. The police officer in Johnson obtained and executed the warrant after personally observing the premises, setting up surveillance, and verifying that the defendant resided there.
State v. Diggs, 98-964, pp. 3-4 (La.App. 4 Cir. 6/24/98), 715 So.2d 692, 694, writ denied, 98-2647 (La.12/11/98); 730 So.2d 462.
The State cites a supreme court case:
As a general rule, mistakes in the use of municipal numbers do not invalidate a search warrant which otherwise describes the premises with sufficient particularity such that the officer with the warrant "can with reasonable effort ascertain and identify the place intended." Steele v. United States, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925); Garrison, 480 U.S. at 88-89, 107 S.Ct. at 1019 (citing Steele ); State v. Scramuzza, 408 So.2d 1316, 1317-18 (La.1982); State v. Korman, 379 So.2d 1061, 1063 (La.1980); see also 2 Wayne R. LaFave, Search and Seizure, § 4.5(a) at 522 (3d ed. 1996) ("[T]he cases reflect an understanding of the fact that errors *1275 can easily occur in the use of numbers, such as an apartment or house number, and that it should be presumed that such an error did occur when other descriptive facts fit a different location.")
State v. Alonzo, 95-2483, pp. 2-3 (La.5/31/96), 675 So.2d 266, 267.
As Defendant observes, an incorrect name and address appear on the lower portion of the first page of the warrant. However, the Defendant's name and correct address appear on the upper half of the same page. Also, the Defendant's name and correct address appear on both pages of the affidavit. Thus, we find that nothing more than a mere typographical error occurred.
Further, the incorrect address was corrected. At the hearing on the motion to suppress, Judge Gerard Wattigny was called as a witness. He explained the correction of the address in the following colloquy:
Q. Your Honor, can you explain to the court what order of events led to the editing of the order portion of the warrant and the initialing?
A. Officer Sheppard came to my residence at night with the affidavit and the search warrant and executed the affidavit, and then I signed the search warrant. Subsequently, after he left he called and indicated to me that the information and address on the front of the search warrant was incorrect and that it was not consistent with what was in the affidavit in that we had missed that at the time that we signed it. I understood at the time that he was in route to Mr. McLeod's residence so I authorized him to scratch out the erroneous portion, which would be Jonathan Hopes, Sr., Mary Alice Hopes and a 2106 Times Street, and to replace them with Carl B. McLeod at 600 Frank Street. I told him to scratch that and add what I'd indicated about Carl McLeod, to initial it, and then to return it to me as soon as he could so that I could initial the change.
Thus, the error was noticed and corrected before the warrant was executed, obviating any probability that the police would search the wrong residence. Considering this fact and the cited jurisprudence, we find this portion of his assignment of error lacks merit.
For the reasons discussed, this entire assignment lacks merit.

ASSIGNMENT OF ERROR NO. 3:
In his third assignment, Defendant argues the trial court erred by granting a challenge for cause on a juror who stated the severity of the penalty would make it difficult for him to serve as a juror. However, in brief, Defendant acknowledges the trial court's ruling is entitled to deference, and, is reviewed under an abuse of discretion standard.
The supreme court has explained:
[A] challenge for cause should nevertheless be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied.
State v. Carmouche, 01-405, p. 5 (La.5/14/02); ___ So.2d ___, 2002 WL 984306. Additionally, the following is well settled: "A trial court is vested with broad discretion in ruling on challenges for cause and these rulings will be reversed only when a review of the voir dire record as a whole reveals an abuse of discretion." State v. Williams, 01-1650, p. 10 (La.11/1/02); 831 So.2d 835, 845, citing, State v. Cross, 93-1189 (La.6/30/95), 658 So.2d 683.
*1276 We note the following colloquy between the court and venireman Louviere, the potential juror at issue:
Q. You think you could decide the case based on the facts and the law as given to you by the Court without regard to what penalty might be imposed?
A. Yes, I can do it. I think I can do it.
Q. I hate to pressure you even more. Because you're the only one who knows, do you know you can do it? If you feel you couldn't please just be honest if you feel it would affect your guilt or innocence position knowing the penalty was out of your hands? It might be more severe than you'd want. If that would affect your ability to decide the case based on the law and the evidence, I just need to know.
A. It would be hard.
Q. You think it would affect you? Do you feel you could not do this job impartially and would be affected by the possible penalties?
A. Yes.

* * *

(Selection at bench continues)
BY THE COURT:
Excused for cause....
Louviere's responses convince us that the trial court did not abuse its discretion in releasing him for cause.
Therefore, the assignment lacks merit.

SECTION 2: PRO SE ASSIGNMENTS

PRO SE ASSIGNMENTS OF ERROR NOS. 1, 2, & 3:
In his first assignment of error, Defendant argues the State knowingly presented perjured testimony at trial, from Detective Murray Sheppard. Defendant asserts the State used leading questions to elicit false information from Sheppard. In response to State's questions, Sheppard asserted that the search warrant he had obtained prior to the undercover operation against Defendant was a "presumptive search warrant" or "anticipated warrant." Defendant's second assignment of error is related to the first, as it also attacks the classification of the warrant. In other words, Defendant alleges it was presented to Judge Wattigny as a regular search warrant, not a "presumptive" or "anticipated" warrant, and thus was invalid under the circumstances of the case. The third assignment is also related, as Defendant argues the warrant did not meet the technical requirements for a presumptive warrant.
Defendant asserts the State's alleged use of leading questions reveal an intent on its part to misuse the information at issue. His claim that information was false is based upon testimony from the suppression hearing, held on November 29, 1999. At that hearing, Judge Gerard Wattigny, the judge who signed the warrant, testified. Defendant points to excerpts from Judge Wattigny's testimony that suggest he did not realize the warrant was meant to be anticipatory in nature.
Defendant's argument in his second assignment of error states that the issue of whether a search warrant is a presumptive/anticipated warrant is essentially a legal question. If that argument is correct, the issue should have been raised in his Motion to Suppress, or at least brought up during the November 29, 1999 hearing. See La.Code Crim.P. art. 703(F).
Further, we note that even though counsel's appellate brief claimed that "anticipatory" warrants do not exist, he appeared to subsume this statement into his argument for a "totality of circumstances" review of the warrant. Additionally, this specific claim does not appear to have been made at the suppression hearing. Thus, we did *1277 not separately address the issue of whether anticipatory/presumptive warrants exist, or how the search warrant in this case should have been classified.
On the other hand, Defendant's third pro se assignment acknowledges the existence of anticipatory warrants under federal law and jurisprudence, despite a dearth of Louisiana jurisprudence on the subject.
The present arguments notwithstanding, our review of the transcript reveals that the issue was not raised at the hearing below. Rather, Defendant contested the authenticity of Judge Wattigny's signature and initials on the warrant, the related issue of the amendment of the warrant, and, the alleged "overbreadth" of the term "contraband." Also, the trial colloquy cited by Defendant does not indicate Defendant raised the classification issue at that time, either. We observes that these issues were raised again in counsel's appellate brief, and thus, those issues were discussed in Section One of this opinion.
Since the issue of the classification of the warrant was not raised at the suppression hearing, the lower court did not have an opportunity to analyze the issue now raised by Defendant, and the State did not have an opportunity to respond. Accordingly, this issue cannot be addressed for the first time on appeal. State v. Moody, 00-0886 (La.App. 1 Cir. 12/22/00), 779 So.2d 4, writ denied, 01-213 (La.12/7/01), 803 So.2d 40; State v. Reese, 34,275 (La. App. 2 Cir. 12/20/00), 774 So.2d 1164. Defendant still has an avenue of relief available in the post-conviction process, where any related or underlying facts may be developed more fully, and the State will have an opportunity to make a full response, if necessary.
We note that Defendant's third pro se assignment also alleges the search warrant lacked underlying facts to support probable cause for a presumptive search warrant. Again, this is an issue that was not raised below; therefore, it will not be addressed for the first time on appeal.
Even though these assignments are not presented in the trial and thus, are not properly before this court, we feel obliged to make the following observation.
La.Code Crim.P. art. 163 provides in pertinent part the following: "A search warrant cannot be lawfully executed after the expiration of the tenth day after its issuance." Thus, Louisiana law provides for an anticipatory search warrant, even if it does not specifically name it such. In this case, the evidence establishes that the warrant was issued on July 22, 1995 and executed July 24, 1995, well within the ten day limit. In State v. Ginorio, 619 So.2d 790, 793 (La.App. 4 Cir.), writ denied, 625 So.2d 1039 (La.1993), our brethren of the Fourth Circuit observed:
The passage of time may adversely affect the validity of a search warrant. Thus, included in the general concept of probable cause, is the necessary element of a reasonable belief that the contraband or evidence will not have been disposed of but will remain at the place to be searched at the time of the proposed search. State v. Lewis, 385 So.2d 226, 229 (La.1980); State v. Durand, 461 So.2d 1090 (La.App. 4th Cir.1984). However, the passage of a few days between observation of probable criminal activity and the execution of a search warrant will not necessarily invalidate the warrant. Staleness is not an issue unless time passage makes it doubtful that the object sought in the warrant will still be in a place where it was observed. State v. Tate, 407 So.2d 1133 (La.1981); State v. Roebuck, 530 So.2d 1242 (La.App. 4th Cir.1988). *1278 In the case sub judice, the affidavit in support of the search warrant related that a continuing police investigation established on-going illegal drug activity at Defendant's residence. As in Ginorio, there was "a reasonable belief that the contraband or evidence w[ould] not have been disposed of but w[ould have] remain[ed] at the place to be searched at the time of the proposed search."

PRO SE ASSIGNMENT OF ERROR NO. 4:
In his fourth assignment, Defendant argues Detective Murray Sheppard used a generic search warrant that he has used in other cases. Again, Defendant attempts to raise an issue before this court that was not raised below. Further, the argument clearly implicates evidentiary matters that were not developed before the lower court. Thus, this assignment should not now be addressed. Again, Defendant may be able to develop his argument by way of post-conviction relief.

PRO SE ASSIGNMENTS OF ERROR NOS. 5 & 6:
In his fifth assignment, Defendant raises a number of issues. First, he repeats his complaint regarding whether the search warrant was an "anticipatory" warrant, and that it was fraudulently obtained. For the reasons already discussed, this part of the assignment should not be considered.
Next, he argues the warrant's use of such terms as "any and all moneys," "contraband," and "paraphernalia" was overbroad. Defendant raised this issue in regard to the term "contraband" in the court below, and again in counsel's brief on appeal. As discussed in the first section of this opinion, the argument regarding the term "contraband" as being overbroad lacks merit.
Defendant's arguments regarding the terms "moneys" and "paraphernalia" were not raised below, and thus were not addressed below. Thus, they are not properly before this court at this time
Likewise, Defendant's sixth assignment, which alleges the search warrant was executed without the accompanying affidavit, and repeats the claim the affidavit lacked sufficient indicia of probable cause, presents additional issues that were not raised at the suppression hearing.
Thus, for the reasons discussed in section one of this opinion, Defendant's argument regarding the vagueness or overbreadth of the term "contraband" lacks merit. The remainder of his arguments under these assignments were not raised below; therefore, they are not properly before this court at this time.

PRO SE ASSIGNMENT OF ERROR NO. 7:
In his final pro se claim, Defendant argues his right to a speedy appeal has been violated. As discussed in the procedural history, Defendant was convicted in December of 1999. For reasons that are not entirely clear, his appeal was not granted until September of 2002.
Neither Louisiana law nor jurisprudence provides for a right to a speedy appeal. Perhaps for this reason, Defendant relies upon various federal appellate decisions on this subject. However, Louisiana courts are not bound by such federal decisions. See State v. Penns, 99-2916 (La.12/20/99), 758 So.2d 776, cert. denied, 529 U.S. 1134, 120 S.Ct. 2014, 146 L.Ed.2d 963 (2000). The "right to a speedy appeal" simply does not exist in Louisiana. Therefore, this assignment lacks merit.

CONCLUSION
In sum, Defendant's claim alleging the vagueness or overbreadth of the term "contraband" in the search warrant lacks *1279 merit, as discussed in the original Assignment of Error No. 1 argued by counsel.
Also, a "right to speedy appeal" does not exist in Louisiana jurisprudence; therefore, Defendant's claim of such a right lacks merit.
As the remainder of Defendant's claims were not raised at the suppression hearing they will not be considered for the first time on appeal. Defendant may choose to pursue these claims in the post-conviction process.
DISPOSITION:
Accordingly, for the reasons stated above, Defendant's conviction and sentence are affirmed.
AFFIRMED.