988 So.2d 870 (2008)
STATE of Louisiana, Appellee
v.
Raymond DARNELL, Appellant.
No. 43,048-KA.
Court of Appeal of Louisiana, Second Circuit.
August 13, 2008.
*872 Elton B. Richey, Jr., Shreveport, for Appellant.
Paul J. Carmouche, District Attorney, John Ford McWilliams, Jr., Lea Hall, Jr., Brady O'Callahan, Assistant District Attorneys, for Appellee.
Before BROWN, WILLIAMS, and MOORE, JJ.
BROWN, Chief Judge.
In a two-count bill of information, defendant, Raymond Darnell, was charged with the attempted first degree murder of Shreveport Police Officer Freddie Clinton (count one) and the attempted second degree murder of Arlicia McDonald, an ex-girlfriend (count two). He was convicted on both counts and adjudicated a second felony habitual offender. On count one, defendant was sentenced to 100 years at hard labor without benefit of parole, probation, or suspension of sentence, and on count two, he was sentenced to a consecutive 50 years at hard labor without benefit of parole, probation, or suspension of sentence. Defendant appeals his convictions and sentences. For the reasons set forth below, we affirm.

FACTS
The shooting in this case was the culmination of a history of domestic abuse against Arlicia McDonald by defendant that included rape, trespass and harassment charges. Approximately two and a half months prior to this incident, in a paternity action, defendant was found to be the father of Ms. McDonald's son and ordered to pay child support. On the evening of May 17, 2006, defendant followed Ms. McDonald from her place of employment at Mall St. Vincent in Shreveport, Louisiana. Turning off Greenwood Road onto Broadway, Ms. McDonald pulled alongside Shreveport Patrol Officer Freddie Clinton who was stopped for a red light on Broadway. Ms. McDonald told the officer that she was being followed by someone in a lime green SUV and then she drove away. Officer Clinton heard a crash, looked back and saw that a green SUV had struck Ms. McDonald's car. Officer Clinton made a U-turn, activated his emergency lights and sirens, radioed for assistance, and pursued.
Officer Clinton witnessed the green SUV push Ms. McDonald's car into a pole. Ms. McDonald's car caught fire and she ran across the street to where Officer Clinton had stopped, shouting that defendant had a gun. Officer Clinton, who had exited *873 his vehicle, testified that Ms. McDonald was hysterical and was "glued" to his body. Defendant walked to Ms. McDonald's burning car. Defendant was armed with a .410 gauge single shot sawed-off shotgun. When defendant saw Ms. McDonald and Officer Clinton across the street, he pointed the shotgun directly at both of them and fired. Officer Clinton testified that he heard shotgun pellets go by his head. Officer Clinton returned fire while at the same time pulling Ms. McDonald around the rear of his police vehicle to take cover on the passenger side. Defendant reloaded his shotgun and moved to the driver's side of Officer Clinton's marked unit. A second police vehicle driven by Officer Josh Feliciano arrived and stopped behind Officer Clinton's unit. The video from this second police vehicle showed that the door on the driver's side of Officer Clinton's squad car was open and that defendant alternately pointed the weapon through the door and then over the hood of the police car attempting to get a clear shot.
Officer Clinton returned fire with his pistol over the hood of his police car. Realizing that Officer Clinton had emptied his magazine, defendant ran around the front of the patrol unit and pointed his shotgun at both Officer Clinton and Ms. McDonald as they started to run away. Defendant shot at close range striking Ms. McDonald in the backside, rear upper thigh area. Ms. McDonald was only a step behind Officer Clinton at the moment defendant fired. Defendant then proceeded to hit Ms. McDonald in the head with his shotgun. Officer Feliciano fired several shots at defendant, one of which struck him in the chest and knocked him to the ground. At this point, defendant started screaming out his lawyer's name.
The subsequent police investigation located two spent shotgun casings, one in the street and one by Officer Clinton's patrol unit. Investigators also retrieved two additional live shotgun shells from the street and three live shotgun shells from defendant's SUV.
Defendant initially pled not guilty and not guilty by reason of insanity, but after jury selection, changed his plea to not guilty. At the conclusion of a four-day trial, a jury found defendant guilty as charged on both counts: the jury voted 10 to 2 on the attempted first degree murder of a peace officer charge (count one) and was unanimous on the attempted second degree murder charge (count two).

Discussion

Sufficiency of the Evidence
Defendant argues that the evidence is insufficient to prove that he had the specific intent to kill Officer Clinton (count one). According to defendant, the evidence at most demonstrated that his "murderous intent" was directed solely at Ms. McDonald.
Murder, in any degree, is the killing of a human being. To be guilty of an attempt to murder the offender must necessarily have intended to kill. The decision of the U.S. Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), expanded appellate review of facts in state court criminal cases. The Jackson decision did away with Louisiana's no evidence standard because it did not adequately protect due process guarantees. The court in Jackson held that due process required that an offender only be convicted "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged" and that the standard of appellate review is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime *874 proven beyond a reasonable doubt." Jackson, 443 U.S. at 319, 99 S.Ct. at 2789. This test pronounced in Jackson has been fully implemented by the Louisiana Supreme Court and is legislatively embodied in La. C. Cr. P. art. 821.
Specific intent is a state of mind that may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Kahey, 436 So.2d 475 (La.1983); State v. Allen, 41,548 (La.App. 2d Cir.11/15/06), 942 So.2d 1244, writ denied, 07-0530 (La.12/07/07), 969 So.2d 619.
The evidence at trial shows that defendant fired at least two shots during this incident.[1] Both Officer Clinton and Ms. McDonald testified that the first shot was fired when Ms. McDonald was "glued" to Officer Clinton's body, who was standing next to the driver's side door of his patrol unit. At the time, defendant was approximately 50 feet from Ms. McDonald and Officer Clinton. Defendant aimed at both Officer Clinton and Ms. McDonald and then fired. Officer Clinton testified that he heard the pellets go right above his head.
There was no evidence showing that defendant withdrew or waited for a clear shot at Ms. McDonald. There was no evidence that defendant told Officer Clinton to get out of the way. Rather, defendant fired at both Ms. McDonald and the officer. The pointing and firing of the sawed-off shotgun at both Ms. McDonald and Officer Clinton was sufficient evidence for a reasonable juror to find a specific intent to kill both Officer Clinton and Ms. McDonald. We note that Richard Beighley, a firearms identification and analysis expert, opined that any one of the pellets fired at that distance could have been lethal if a vital organ or blood vessel had been struck. See State v. Brown, 42,054 (La.App. 2d Cir.08/29/07), 965 So.2d 580, writ denied, 07-1939 (La.02/15/08), 976 So.2d 174 (the defendant's specific intent to kill may be inferred from his act of pointing a gun and firing into a group of people; "[i]t is of no consequence whether defendant, in firing his weapon into a crowd, intended to hit one person or several people."); State v. Butler, 618 So.2d 572 (La.App. 2d Cir.1993), writ denied, 624 So.2d 1226 (La.1993) (specific intent needed to support convictions for attempted first degree murder was established by evidence that defendant deliberately fired shots into a crowd).
Further, the video evidence from Officer Feliciano's dashboard camera shows defendant pointing his shotgun from the driver's side window of Officer Clinton's patrol unit to the opposite window as Officer Clinton moved back and forth from behind the passenger side door and the hood of his car. At this time, Ms. McDonald was on the ground. A rational juror could have concluded that defendant was trying to get a clear shot at Officer Clinton.
While Officer Clinton was trying to reload, defendant went around the front of *875 the patrol unit and shot his scattergun at close range just as Officer Clinton and Ms. McDonald attempted to retreat to Officer Feliciano's unit. Defendant's shot could have easily hit either Officer Clinton or Ms. McDonald.
A rational jury clearly could have found all of the essential elements of the crime charged in count one beyond a reasonable doubt.

Erroneous Jury Instruction
Defendant next asserts that the jury was improperly instructed about the specific intent element by the prosecutor (during closing arguments) and the trial court (in the charge to the jury). Specifically, he argues that the jury was led to believe that they did not have to find that defendant had the specific intent to kill Officer Clinton and that they could convict him of attempted first degree murder of a peace officer as long as they found that defendant had the specific intent to kill Ms. McDonald under the transferred intent doctrine. However, no contemporaneous objection was made to either the argument or jury instructions. It was only after the case was submitted to the jury for deliberation that the defense made an oral motion for mistrial, arguing that the state improperly raised the issue of transferred intent.
Unless objected to contemporaneously, an irregularity or error in the charge to the jury may not be asserted on appeal. La. C. Cr. P. art. 841; State v. Belgard, 410 So.2d 720 (La.1982); State v. Wilson, 28,403 (La.App. 2d Cir.08/21/96), 679 So.2d 963. In addition, a judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity or variance which does not affect substantial rights of the accused. La. C. Cr. P. art. 921.
A prosecutor's misstatements of the law during voir dire examination, or in his opening and closing remarks, do not require reversal of a defendant's conviction if the court properly charges the jury at the close of the case. State v. Cavazos, 610 So.2d 127 (La.1992). The court will not reverse a conviction if not "thoroughly convinced" that the argument influenced the jury and contributed to the verdict. State v. Legrand, 02-1462 (La.12/03/03), 864 So.2d 89, cert. denied, 544 U.S. 947, 125 S.Ct. 1692, 161 L.Ed.2d 523 (2005).
Not only did defendant fail to contemporaneously object to the purported misstatements by the prosecutor or the trial court's instructions, this assigned error is not supported by the record. Defendant misconstrues the state's argument. A careful review of the entire record reveals that the state consistently took the position that the specific intent to kill concerning Officer Clinton was an essential element of count one, but that specific intent could be inferred from the same facts that proved the specific intent to kill Ms. McDonald, namely defendant's act of shooting a shotgun directed at both of them while they were standing next to each other. The state's position is consistent with our well-settled jurisprudence, which holds that the pointing of a gun and firing it into a crowd is evidence of a specific intent to kill more than one person. See, State v. Brown, supra; State v. Butler, supra.
The trial court instructed the jury that "[a]ttempted first degree murder is the attempted killing of a human being when the offender has a specific intent to kill when the attempt is directed at a peace officer engaged in the performance of his lawful duties." The jury was further instructed that "[s]pecific criminal intent is the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal *876 consequences to follow his act or failure to act," and that intent "may be inferred from the circumstances." These instructions were legally correct.

Failure to Conduct a Contradictory Hearing/Rule on Defendant's Competency to Stand Trial
Defendant argues that the trial court erred by permitting proceedings to continue after his motion for a sanity commission was granted without first ruling on the issue of defendant's competency to stand trial and without conducting a contradictory hearing on the issue.
On July 31, 2006, defendant pled not guilty and not guilty by reason of insanity. On August 2, 2006, the state filed a motion for appointment of a sanity commission as a result of defendant's plea. The trial court granted the motion, and appointed Dr. Charles Armistead and Dr. George Seiden to the sanity commission to make an examination as to defendant's mental condition at the time of the offense and his present mental capacity to proceed.
On August 18, 2006, Dr. Armistead filed his written report, wherein he found that defendant was competent to stand trial, but noted that a finding regarding defendant's sanity at the time of the offense would require testimony regarding his behavior at the time in question. On December 5, 2006, Dr. Armistead filed an addendum to his report stating that the subsequent viewing of police videotapes had not helped him make any additional finding as to defendant's sanity at the time of the offense. On September 5, 2006, Dr. Seiden filed his written report, wherein he found that defendant was competent to stand trial and that defendant was sane at the time of the alleged offense.
This court remanded the matter to the trial court because the record originally furnished to this court on appeal did not indicate whether a contradictory hearing was held pursuant to La. C. Cr. P. art. 647, and more importantly, did not reflect a specific finding by the trial judge that defendant had the capacity to proceed.
The trial court conducted a hearing pursuant to the remand. At that hearing, the trial court stated for the record:
[During the November 2006 off-the-record discussions with the defense and the state,] I told them that based on the reports of Doctors Armistead and Sidon [sic] in which both doctors clearly stated that they believed that Mr. Darnell was competent and the fact that they believed that he did have the capacity to proceed, I advised the [defense] lawyer that it appeared to me clearly that the ruling would be that Mr. Darnell has a capacity to proceed and understand the proceedings and assist counsel.
The defense counsel would have been entitled to a contradictory hearing at which time both doctors would testify and they would have been entitled to present whatever other evidence would be relevant on the issue of competency; however, they conceded on the reports of Doctors Armistead and Sidon [sic]. They did not seek a hearing.
Pursuant to La. C. Cr. P. art. 642, the issue of a defendant's competency to stand trial may be raised at any time by the defense, the prosecutor or the trial judge, and once raised, no further steps in the prosecution, except the institution of prosecution, shall be taken until the court, in a specific finding of fact, determines that the defendant has the mental capacity to proceed. State v. Reese, 34,275 (La.App. 2d Cir.12/20/00), 774 So.2d 1164.
This court has held that a defendant may waive a full hearing and submit competency based on the uncontroverted *877 reports of the appointed doctors. State v. Reese, supra; State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991); State v. Lott, 27,849 (La.App. 2d Cir.04/03/96), 671 So.2d 1182. However, the motion for a sanity commission cannot be withdrawn because that would remove the ultimate decision regarding competency from the trial court. State v. Carney, 25,518 (La.App. 2d Cir.10/13/95), 663 So.2d 470. Indeed, it would be contradictory to simultaneously argue that a defendant may be mentally incompetent to proceed and that he may also knowingly and intelligently waive his right to have the trial court determine his competency to stand trial. State v. Carney, supra; State v. Harris, 406 So.2d 128 (La.1981).
The supplemental record clearly reveals that a mental capacity determination had in fact been made in November 2006 and that the trial court explicitly afforded the defense the opportunity to conduct a contradictory hearing. Although a defendant cannot waive the requirement of a specific mental capacity finding once the issue is raised, he can submit to such a determination based on the sanity commission reports. See, State v. Reese, supra. That is exactly what happened in this case. Defendant cannot complain on appeal about the lack of a contradictory sanity hearing after he agreed to submission on the competency issue based on the sanity commission reports, especially since he did not object to further proceedings until post-trial. See, State v. Narcisse, 426 So.2d 118 (La.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983) (affirming trial court's capacity determination made in off-the-record conference with parties without conducting contradictory hearing); State v. Young, 576 So.2d 1048 (La.App. 1st Cir.1991), writ denied, 584 So.2d 679 (La.1991).
As for defendant's argument concerning the trial court's alleged failure to stay the proceedings, the only intervening actions taken by the state or the trial court prior to the trial court's capacity determination involved the filing of discovery responses by the state and some apparent scheduling conferences. The purpose of the stay of prosecution under Article 642 is to ensure that no action prejudicial to the defendant will be taken until the defendant's capacity to understand the nature of the proceedings and to assist in his defense has been established. See, La. C. Cr. P. art. 642, Official Revision Comment (b); State v. Perkins, 00-9 (La.App. 5th Cir.05/17/00), 759 So.2d 334, writ denied, 00-1826 (La.04/26/02), 813 So.2d 1098. None of the actions taken could be deemed prejudicial to defendant in any manner.

Ineffective Assistance of Counsel
Although represented by retained attorneys, one of whom was his uncle, defendant wants a new trial based on ineffective assistance of counsel. As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief ("PCR") in the trial court rather than by appeal. However, a motion for new trial is also an accepted vehicle by which to raise such a claim when the record is sufficient to resolved the issue on direct appeal. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Ellis, 42,520 (La.App. 2d Cir.09/26/07), 966 So.2d 139, writ denied, 07-2190 (La.04/04/08), 978 So.2d 325.
Defendant's primary complaint involves the "not guilty by reason of insanity" plea and then the withdrawal of that plea just prior to opening statements. Apparently, a strategic decision was made by retained defendant's attorneys. This record is not sufficient to resolve this issue. Thus, this *878 would be more properly raised in a PCR application in the trial court.

Excessive Sentence
Defendant challenges his second felony habitual offender sentence on count one (attempted first degree murder of a peace officer). Defendant urges that the maximum 100-year hard labor sentence is excessive.
In a contradictory hearing, the state submitted letters from Ms. McDonald and Officers Clinton and Feliciano. The defense presented four witnesses and defendant also made an oral statement.
At the conclusion of the hearing, the trial court recited the facts of the offenses in detail, noting the viciousness of the attack and how defendant placed more than one person at significant risk of death or great bodily harm. The court noted defendant's anger at being directed to pay child support. Defendant's own letters (introduced at the sentencing hearing) revealed that he was so angry that he made his own pre-need funeral arrangements the same day as the attempted murders. Defendant clearly intended to kill Ms. McDonald and anyone that got in his way.
Defendant's prior criminal history revealed a disturbing pattern of criminal conduct and repeated harassment directed at Ms. McDonald, including an arrest for aggravated rape in 2004 and a guilty plea to a reduced charge of false imprisonment while armed with a dangerous weapon. Defendant made repeated threats to kill Ms. McDonald in 2005 and had been ordered by the Fourth Judicial District Court in Monroe to cease all contact with Ms. McDonald. Defendant was also banned from St. Vincent Mall in Shreveport (where Ms. McDonald worked) and her apartment in Monroe. In 2006, defendant was arrested for improper telephone communications and harassment. The record also discloses that defendant was arrested in 2002 for simple assault and resisting an officer. In mitigation, the trial court considered defendant's age, family ties, and employment record. The court also took into account defendant's mental state, including his purported depression.
Considering the nature of the crimes, the harm done to the victims, and defendant's criminal history, we cannot say that the maximum sentence shocks a sense of justice. State v. Smith, 01-2574 (La.01/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993). This assignment is without merit.

Conclusion
For the foregoing reasons, defendant's convictions and sentences are affirmed.
NOTES
[1] Defendant argued both at trial and in his motion for post-verdict judgment of acquittal that the DVD evidence did not contain any audio supporting the contention that defendant fired more than one shot (the shot that struck Ms. McDonald). The record indicates that, during the trial, the prosecution was able to isolate the sound of a shotgun blast at the point when Ms. McDonald was standing next to Officer Clinton when he initially exited his patrol unit (which is when the first shot was alleged to have been fired). The physical evidence retrieved from the crime scene revealed two spent shotgun casings, and Ms. McDonald and Officer Clinton both testified about there being two shots. This evidence was sufficient to support the jury's requisite factual conclusion that defendant fired two shots. In any event, defendant concedes on appeal that he fired two shots.