BROWN, C.J.
*1164 After being granted post-conviction relief, defendant, Raymond Darnell, was resentenced as a second felony offender to consecutive terms of 90 years at hard labor, without benefit of parole, probation or suspension of sentence, on an attempted first degree murder conviction and 45 years at hard labor without benefit of parole, probation or suspension of sentence, on an attempted second degree murder conviction. A timely motion to reconsider was denied by the trial court. Defendant appeals his sentences as excessive. We affirm.
FACTS
Defendant was charged in a two-count bill of information with the attempted first degree murder of a Shreveport police officer and the attempted second degree murder of Arlicia McDonald, defendant's ex-girlfriend, when Darnell was 21 years old. Defendant's convictions and sentences were affirmed in State v. Darnell , 43,048 (La. App. 2 Cir. 08/13/08), 988 So.2d 870, writ not considered , 08-2258 (La. 05/01/09), 6 So.3d 803. The facts which formed the basis for these charges were set forth in defendant's previous appeal. On the evening of May 17, 2006, defendant followed the victim, Ms. McDonald, from her place of employment, ultimately striking her vehicle with his own car and pushing it into a utility pole. Shreveport patrol officer Freddie Clinton arrived at the scene, and Ms. McDonald ran to him for protection. Defendant was armed with a .410 gauge single-shot sawed-off shotgun and, upon seeing the victim and Officer Clinton across the street, pointed the shotgun directly at both of them and fired. Thereafter, the following events transpired:
Officer Clinton returned fire while at the same time pulling Ms. McDonald around the rear of his police vehicle to take cover on the passenger side. Defendant reloaded his shotgun and moved to the driver's side of Officer Clinton's marked unit. A second police vehicle driven by Officer Josh Feliciano arrived and stopped behind Officer Clinton's unit. The video from this second police vehicle showed that the door on the driver's side of Officer Clinton's squad car was open and that defendant alternately pointed the weapon through the door and then over the hood of the police car attempting to get a clear shot.Officer Clinton returned fire with his pistol over the hood of his police car. Realizing that Officer Clinton had emptied his magazine, defendant ran around the front of the patrol unit and pointed his shotgun at both Officer Clinton and Ms. McDonald as they started to run away. Defendant shot at close range striking Ms. McDonald in the backside, rear upper thigh area. Ms. McDonald was only a step behind Officer Clinton at the moment defendant fired. Defendant then proceeded to hit Ms. McDonald in the head with his shotgun. Officer Feliciano fired several shots at defendant, one of which struck him in the chest and knocked him to the ground. At this point, defendant started screaming out his lawyer's name.[1]
State v. Darnell , 988 So.2d at 873.
On December 5, 2012, defendant was granted post-conviction relief, and the matter was remanded for a resentencing hearing on the grounds of conflict of interest.[2]
*1165 At the July 15, 2015, proceedings, defendant presented mitigating evidence of his abuse and alleged mental issues.
That evidence included the testimony of Dr. Sarah Deland, an expert in forensic psychiatry, and two of defendant's siblings, who testified regarding defendant's childhood with his five siblings, an abusive father, and the effects of the abuse on defendant. The witnesses confirmed that defendant's father's drinking led to the outbursts of anger, violence, and "moderately severe" physical confrontations that occurred "very frequently, sometimes daily," for a period of several years. As the oldest of six children, defendant tried to protect some of the younger children from abuse.
Regarding defendant's mental state, Dr. Deland testified that as a result of the abuse, he manifested symptoms of "post-traumatic stress disorder," although she would not give him "the full-blown diagnosis" due to lack of sufficient information. These symptoms included mood instability, irritability, difficulty getting along with people, trouble sleeping, and paranoia. Dr. Deland also did not conclude that defendant had a personality disorder, but found that he had "narcissistic personality traits and some paranoid personality traits" that lend themselves to a "conflictual existence with the world." In fact, defendant's family revealed that he had "very little frustration tolerance" and did "not handle limits very well," i.e., defendant got angry very quickly and had trouble with "being told no and authority." Dr. Deland confirmed that defendant was experiencing sleep disturbance and was sleeping with weapons, including a butcher knife, for protection in the weeks preceding the incident. Dr. Deland also learned that defendant had greatly increased his alcohol intake, which was "very different" for defendant because he had not been a substance abuser in the past. Defendant informed Dr. Deland that he had been drinking up to a case of beer a day, and in the months leading to the incident, had also started smoking marijuana. Dr. Deland testified that although defendant's untreated symptoms of depression and post-traumatic stress disorder put him at a "higher risk for acting out violently," the substance abuse was an "enormous, huge" risk factor.
According to Dr. Deland, at the time of the incident, defendant was despondent and went to a funeral home to plan his funeral after having thoughts about killing himself and hurting somebody else.[3] Defendant told Dr. Deland that after he went to the funeral home, he went back to his house where he drank beer and placed a sawed-off shotgun to his head. He then took a nap and wrote letters before embarking on the criminal acts for which he was convicted. According to Dr. Deland, defendant did not deny the police report account of the incident, although he stated that he did not remember everything that happened.[4]
Defendant was resentenced as a second felony offender on November 30, 2015. Prior to imposing sentence, the trial court vacated defendant's previously imposed maximum sentences and imposed a sentence *1166 of 90 years at hard labor without benefit on the attempted first degree murder conviction and 45 years at hard labor without benefit on the attempted second degree murder conviction. The trial court imposed the sentences consecutively, with defendant to be given credit for time served. The trial court stated that it considered the resentencing hearing testimony and reviewed the pre-sentence investigation report prepared for defendant's resentencing, together with documentation submitted on behalf of the parties, including letters tendered on defendant's behalf. The trial court also noted its review of the sentencing memoranda filed by defendant and the state.[5] The trial court reviewed the sentencing guidelines of La. C. Cr. P. art. 894.1, noting defendant's need of correctional treatment or a custodial environment and the fact that any lesser sentences would deprecate the seriousness of both offenses. The trial court also ordered that defendant receive "any and all mental help treatment" and recommended him to any and all special programs for which he may be eligible.[6]
Defendant filed a motion to reconsider sentence on December 21, 2015, urging that the imposed sentences were excessive, would "result in Defendant spending the remainder of his life in prison," and failed to acknowledge his abusive upbringing. After the trial court denied the motion to reconsider, this appeal ensued.
DISCUSSION
Defendant argues that his sentences as they stand are constitutionally excessive. Defendant also argues that, in resentencing him, the trial court failed to take into consideration his youth and mental illness, urging that evidence of his post-traumatic stress disorder symptoms, paranoia and depression should have been considered mitigating factors by the trial court. Finally, defendant asserts that, because the trial court failed to articulate why it imposed consecutive sentences, the sentences should be vacated and the matter remanded for resentencing.
A reviewing court imposes a two-prong test in determining whether a sentence is excessive. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. State v. Mandigo, 48,801 (La. App. 2 Cir. 02/26/14), 136 So.3d 292, writ denied, 14-0630 (La. 10/24/14), 151 So.3d 600. There is no requirement that specific matters be given any particular weight at sentencing. State v. Jackson, 48,534 (La. App. 2 Cir. 01/15/14), 130 So.3d 993.
Second, a sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey , 623 So.2d 1276 (La. 1993) ; State v. Scott , 50,920 (La. App. 2 Cir. 11/16/16), 209 So.3d 248 ; State v. Mandigo , supra. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver , 01-0467 (La. 01/15/02), 805 So.2d 166 ; State v. Scott, supra. A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that *1167 discretion, a sentence will not be set aside as excessive. State v. Mandigo, supra.
Recognized, diagnosed mental illnesses should be considered to mitigate the type and length of sentence imposed on the offender, even if the defendant has been ruled legally sane. State v. Sibley , 09-1104 (La. App. 3 Cir. 06/02/10), 41 So.3d 581. See State v. Legendre, 522 So.2d 1249 (La. App. 4 Cir. 1988), writ denied , 523 So.2d 1321 (La. 1988) (a five-year maximum sentence for second degree battery was vacated on grounds that the trial court should have considered the defendant's long history of mental illness, diagnosis of paranoid schizophrenia, and resistance to taking medications as mitigating sentencing factors); and State v. Lafleur , 16-467 (La. App. 3 Cir. 01/04/17), 209 So.3d 927 (an abuse of the trial court's "considerable discretion" in sentencing defendant to the maximum sentence was found, particularly considering the strong evidence of defendant's mental illness that included a history of psychiatric hospitalizations, diagnosis of schizophrenia, paranoia and noncompliance with medication).
When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently, unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. Concurrent sentences arising out of a single course of conduct are not mandatory, and consecutive sentences under those circumstances are not necessarily excessive. State v. Scott, supra. When consecutive sentences are imposed, the court is required to state the factors considered and its reasons for the consecutive terms. However, the failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. State v. Scott, supra ; State v. Robinson , 49,677 (La. App. 2 Cir. 04/15/15), 163 So.3d 829, writ denied , 15-0924 (La. 04/15/16), 191 So.3d 1034.
A trial court retains the discretion to impose consecutive penalties in cases in which the offender's past criminality or other circumstances in his background or in the commission of the crimes justify treating him as a grave risk to the safety of the community. State v. Walker, 00-3200 (La. 10/12/01), 799 So.2d 461 ; State v. Scott, supra. Other factors to be considered include the gravity or dangerousness of the offense, the viciousness of the crimes, the harm done to the victims, whether the defendant constitutes an unusual risk of danger to the public and the potential for defendant's rehabilitation. State v. Robinson, supra. After resentencing, it is appropriate for this Court to review the entirety of the record, including the transcripts of both the original sentencing hearing and the resentencing hearing, to determine whether an adequate factual basis for the trial court's sentence exists and whether the trial court abused its discretion in sentencing. State v. Billingsley , 13-11 (La. App. 3 Cir. 10/09/13), 123 So.3d 336.
As a second felony offender, for the attempted first degree murder conviction, defendant faced a maximum sentencing exposure of 100 years. For the attempted second degree murder conviction, he faced a maximum sentencing exposure of 50 years. Thus, upon resentencing defendant received upper range consecutive sentences.
The resentencing judge indicated her consideration of the testimony presented at the resentencing hearing, which included evidence of defendant's mental condition and moderately severe physical abuse at the hands of his father. Nevertheless, defendant was never formally diagnosed with mental illness, distinguishing him from the defendants in *1168 State v. Legendre, supra, and State v. Lefleur, supra.[7] In fact, the record shows that it was defendant's abuse of alcohol that placed him at an "enormous" risk for violence. Revealing its consideration of defendant's mental issues, the court ordered that defendant was to receive any mental health treatment for which he was eligible and noted its consideration of defendant's sentencing memorandum and arguments of counsel which urged consideration of defendant's mental condition as a mitigating sentencing factor. After taking these matters into account, the trial court ultimately sentenced defendant to lesser sentences on both convictions.[8] Thus, even though the trial court did not specify mental illness as a mitigating factor in sentencing defendant, the record clearly shows that his condition was taken into account by the sentencing judge. The weight to be given to defendant's mental health condition was within the discretion of the trial court. State v. Washington , 50,424 (La. App. 2 Cir. 03/16/16), 188 So.3d 350, writ denied , 16-0718 (La. 04/13/17), 218 So.3d 119. In view of the permanent and adverse effects suffered by the victim due to defendant's disturbing pursuit of and attack on her, any determination that the mitigating effect of defendant's mental issues was outweighed by the aggravating circumstances of this case is supported by the record.
Further, the record shows defendant's age at the time of the offense and a prior instance of assaultive behavior by him against his grandmother which Dr. Deland described as "pretty extreme." The record also shows that in 2004, defendant was arrested for rape of the female victim in this case, but was allowed to plead guilty to false imprisonment while armed with a dangerous weapon. At the time of the present offense, defendant was on probation for the 2004 conviction and was prohibited from having contact with the victim. Even so, defendant consistently threatened and harassed the victim, to the point of being banned from her place of employment and residence.[9]
Finally, the MVS videos introduced into evidence are compelling and disturbing, showing defendant's violent and intentional pursuit of the victim despite his being fired upon by two police officers.[10] The victim was only able to get away after a second officer shot defendant, finally stopping defendant's relentless pursuit of her.
The consideration by the trial court of these facts and evidence discloses sufficient La. C. Cr. P. art. 894.1 compliance and provides an adequate factual basis for the imposed sentences. Further, despite the fact that the trial judge neglected to specifically state the factors she considered or the reasons for the imposition of the consecutive terms, the record before us provides an adequate factual basis to support the imposition of consecutive sentences.
*1169 These particularly disturbing facts, including the gravity and viciousness of the offenses, the harm done, and unusual risk of danger to the victim in this matter, justify treating defendant as a grave risk to the community. At the time of the offense, defendant was on probation for a prior offense involving the victim, his ex-girlfriend, and his continued obsession with her escalated to the point of creating a risk of death to more than one person. Without police intervention, the victim may well have been killed by defendant. In these circumstances, the upper range consecutive sentences imposed by the trial court neither shock the sense of justice, nor can be considered grossly disproportionate to the severity of defendant's criminal conduct.[11]
CONCLUSION
For the foregoing reasons, defendant's sentences are affirmed.

Defendant changed his plea from not guilty by reason of insanity to not guilty. A sanity commission found defendant competent to stand trial.

The conflict of interest arose out of defendant's attorney's representation of defendant's father (who was also the attorney's brother) in child-in-need-of-care proceedings that the trial court found prevented counsel from presenting mitigating evidence of abuse at sentencing.

At the prior sentencing hearing, a funeral home employee confirmed that on May 17, 2006, defendant obtained pre-arranged funeral services.

After Dr. Deland's testimony, the state introduced into evidence the police vehicle MVS videos which had been put into evidence at defendant's trial.

In his sentencing memorandum, defendant asserted that in his case, the line between developmental disadvantages and personal responsibility were blurred by his youth and inexperience, and that his criminal conduct was less the product of a reasoned immoral decision-maker and more of an emotionally disturbed young person who was not equipped to respond to danger, frustration and jealousy.

The trial court informed Darnell of his appeal and post-conviction relief delays.

At the previous sentencing hearing in this case, the trial court considered the findings of the mental expert physicians appointed by the court and accepted that defendant suffered from malingering, adjustment disorder, and narcissistic personality traits, but also concluded that he was in need of correctional treatment.

Defendant originally received consecutive maximum sentences.

The prior sentencing transcript shows that prior to this offense, probation revocation proceedings were pending based upon eight police reports of Darnell making harassing and threatening phone calls to the victim. Darnell had another charge of forgery of his grandmother's name on a check he cashed in February of 2006.

The facts set forth above reflect the events depicted on the videos. The prior sentencing judge also detailed the video on the record and meticulously set forth the factual basis for the sentences he imposed.

Defendant's reliance on State v. Argo , 476 So.2d 409 (La. App. 2 Cir. 1985), State v. Pettaway, 450 So.2d 1345 (La. App. 2 Cir. 1984), and State v. Laird , 572 So.2d 793 (La. App. 4 Cir. 1990), in support of his argument that his sentence for attempted first degree murder of the police officer is excessive is misplaced. While the defendants in each of those cases received 40- to 50-year sentences after shooting the officers and injuring them, each of the offenders were first felony offenders who were not subject to enhanced habitual offender sentencing. Additionally, the maximum sentence for attempted first degree murder at the time of the cases upon which defendant relies on was 50 years, so each defendant received a sentence in the upper range or maximum sentence.