Judgment rendered January 10, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,363-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                        Appellee

versus

WESLEY HARPER, III                     Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 371,519

Honorable Donald E. Hathaway, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Paula C. Marx

JAMES E. STEWART, SR.                 Counsel for Appellee
District Attorney

JASON W. WALTMAN
ALEX L. PORUBSKY
Assistant District Attorneys

* * * * *

Before COX, THOMPSON, and MARCOTTE, JJ.

**COX, J.**

This appeal arises out of the First Judicial District Court, Caddo Parish, Louisiana. Wesley Harper, III was convicted by a unanimous jury of second degree murder. Harper now appeals his sanity hearing and the introduction of certain autopsy photos. For the following reasons, we affirm Harper's conviction and sentence.

### FACTS

On October 15, 2019, Robert Dehn, who was 75 years old, was working at Regency Inn and Suites in Shreveport, Louisiana. He had been working there for five or six years as a night auditor. Harper entered the hotel and spoke to Dehn, who told him he would need an ID to get a room. Harper walked outside, walked back inside, and told Dehn he wanted everything he had. Dehn picked up the phone, presumably to call for help, when Harper punched Dehn, jumped over the counter, and continued to beat Dehn. Dehn was transported to LSU Ochsner Emergency Room. Dehn remained unconscious and unresponsive during his hospital stay and died on November 30, 2019.

On May 19, 2020, a grand jury in Caddo Parish indicted Harper for the second degree murder of Dehn. On May 25, 2021, Harper requested the appointment of a sanity commission. The trial court ordered Drs. Marc Colon and Jenifer Russell to examine Harper. Dr. Russell's report was filed into the record on June 23, 2021. Dr. Colon's report was filed on January 6, 2022. On January 6, 2022, the trial court held a hearing and stated, "All right. I've read both reports, and the doctors have found that he has a rational understanding of the proceedings against him and that he is competent to assist in his defense, so the prosecution against him will begin

again at this time." There were no arguments or additional evidence presented at the hearing.

Harper's trial was held on November 1, 2022, where ten witnesses testified and a surveillance video of the incident was played for the jury. The following testimonies are relevant to Harper's arguments.

Dr. Navdeep Samra, a trauma surgeon and critical care surgeon, testified that he was on call when Dehn was transported to the LSU Ochsner Emergency Room after the assault. He stated the following regarding Dehn's recovery:

> He just couldn't-- his body couldn't just heal with all of these injuries. And because of that initial-- sorry, because of the initial injuries and his age and comorbid conditions, the cascade of events started that he just couldn't recover to heal, and then, ultimately, he developed [a] pneumonic process, and he just couldn't-- he coded later down the road and family goals of care discussions were done and then it was made of comfort care.

Defense counsel questioned Dr. Samra regarding Dehn's preexisting conditions.[1] When asked if the preexisting conditions could have contributed to his death, Dr. Samra clarified that the preexisting conditions contributed to his healing process. On redirect, Dr. Samra stated, "He went to the hospital because of this event, this assault which happened, and then he-- unconsciousness, he aspirated at the scene. All of those things led him to go to the hospital and that ultimately led to the bad outcome."

Dr. Long Jin, an expert in forensic pathology and an instructor at LSU Ochsner, testified that he performed the autopsy on Dehn. During his testimony, the State introduced six autopsy photos into evidence. Defense

---

[1] Dehn's preexisting conditions included weak bones, diabetes, atrial fibrillation, and "other comorbid conditions." It was also noted that because of his age, he had wound healing issues.

counsel objected to the photos and the trial court overruled the objection. The photos included an identifying photo, with the assigned autopsy number; photos of Dehn's left and right sides where the tracheostomy in the neck is visible; photos of Dehn's refracted scalp and three spots of hemorrhage; a closer view of the refracted scalp; and Dehn's left temporal area and extensive hemorrhage. Dr. Jin determined that Dehn's cause of death was homicide.

On cross-examination, Dr. Jin agreed that preexisting conditions could have contributed to Dehn's death. Dr. Jin stated that he reviewed Dehn's history and still concluded that his death was a homicide.

Defense counsel highlighted Dehn's preexisting conditions and age during closing arguments. The jury deliberated for less than an hour and unanimously found Harper guilty as charged of second degree murder. Harper was sentenced to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence.

## DISCUSSION

*Sanity Hearing*

Harper argues the trial court erred in failing to make a specific finding of competence and mental capacity to proceed prior to trial. He asserts that the following statement by the trial court falls short of determining mental capacity, "All right. I've read both reports, and the doctors have found that he has a rational understanding of the proceedings against him and that he is competent to assist in his defense, so the prosecution against him will begin again at this time." The State argues that Harper waived his right to a full contradictory hearing on his sanity motion where no contemporaneous

3

objection was lodged at the time of the trial court's ruling. They assert that the trial court's ruling was a sufficient finding of competency.

The defendant's mental incapacity to proceed may be raised at any time by the defense, the district attorney, or the court. When the question of the defendant's mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the defendant is found to have the mental capacity to proceed. La. C. Cr. P. art. 642.

This court has held that a defendant may waive a full hearing and submit competency based on the uncontroverted reports of the appointed doctors. *State v. Darnell*, 43,048 (La. App. 2 Cir. 8/13/08), 988 So. 2d 870, 876, *writ not cons.*, 08-2258 (La. 5/1/09), 6 So. 3d 803; *State v. Wry*, 591 So. 2d 774 (La. App. 2 Cir. 1991). However, the motion for a sanity commission cannot be withdrawn because that would remove the ultimate decision regarding competency from the trial court. *Darnell, supra*. Indeed, it would be contradictory to simultaneously argue that a defendant may be mentally incompetent to proceed and that he may also knowingly and intelligently waive his right to have the trial court determine his competency to stand trial. *Id.*

The trial court made a competency determination at a hearing on January 6, 2022. Harper was present via video call and represented by counsel. Based on the hearing transcript, the competency determination was based on the sanity commission reports, and the trial court stated it would base its decision on the reports. Defense counsel was present at the hearing and had the opportunity to present evidence of Harper's incompetence. In addition, no objection was made to the trial court's determination that

4

Harper was competent to stand trial based on the sanity commission reports. This is not an instance of a competence determination not being made; the trial court determined competency. Harper cannot complain on appeal about the lack of a full contradictory sanity hearing after defense counsel was aware that the trial court was prepared to determine competency based on the sanity commission reports, especially since he did not object until filing this appeal. This assignment of error lacks merit.

*Autopsy Photographs*

Harper argues that the trial court erred in allowing the admission of gruesome autopsy photos because the prejudicial effect of the photos outweighed their probative value. He asserts that the photos of Dehn's refracted scalp, showing hemorrhage, were particularly gruesome. Harper argues that he did not dispute that he attacked Dehn; therefore, the probative value of the photos was substantially outweighed by their potential to prejudice the jury. He requests his conviction be reversed, his sentences vacated, and he be given a new trial. In response, the State argues that the photos were critical to their case in establishing that Harper's beating of Dehn disabled Dehn and was a direct cause of his death in the hospital six weeks later.

The standard for the admission of gruesome photos is long settled. *State v. Wills*, 48,469 (La. App. 2 Cir. 9/25/13), 125 So. 3d 509, 518, *writ denied*, 13-2563 (La. 6/13/14), 140 So. 3d 1184. Photographs which illustrate any fact or issue in the case, or are relevant to describe the person, place, or thing depicted, are generally admissible. *State v. Huff*, 27,212 (La. App. 2 Cir. 8/23/95), 660 So. 2d 529, 535, *writ denied*, 96-0212 (La. 5/1/97), 693 So. 2d 754. Autopsy photographs are admissible to corroborate other

5

evidence establishing the cause of death, the manner in which the death occurred, and the location, severity, and number of the wounds. *Id.*

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. La. C.E. art. 403. The test for admissibility of gruesome photographs is whether the prejudicial effect of the photographs clearly outweighs their probative value. *Huff, supra.*

The complained of photos were used by the coroner to show the hemorrhage under Dehn's scalp and explain the coroner's finding that the cause of death was homicide. In addition, Harper's guilty verdict did not depend on these pictures; medical testimony revealed that Dehn was unable to recover from his injuries and Harper did not dispute that he caused the injuries. These photos were a part of the State's argument that Dehn died from his injuries, not another intervening cause. While autopsy photos are not pleasant by nature, the photos in question are not gruesome or shocking. This assignment of error lacks merit.

## CONCLUSION

For the reasons detailed above, we affirm Harper's conviction and sentence.

**AFFIRMED**.