JOAN BERNARD ARMSTRONG, Chief Judge.
hRoy Anthony Johnson (“Johnson”) was charged by an indictment issued by a St. Bernard Parish grand jury with second degree murder in violation of La. R.S. 14:30.1. The grand jury “returned a ‘true bill’” on November 28, 2001. The indictment was signed on November 29, 2001.
After a sanity hearing held on January 15, 2002, the trial court determined that Johnson was unable to adequately assist in his defense and remanded him to the mental health facility in Jackson, Louisiana. On March 1, 2005, the trial court conducted a sanity hearing and determined that Johnson had been rehabilitated and could proceed to trial. Johnson filed and the trial court rejected a second motion for a sanity hearing on April 12, 2005.
On November 7, 2006, the trial court allowed Johnson to plead insanity again and ordered defense counsel to prepare the judgment. However, Johnson’s counsel apparently chose not to request another sanity hearing.
On January 24, 2007, the trial court denied Johnson’s Motion to Quash the indictment and Motion to Suppress Confession. On the same 1 gday, Johnson proceeded to trial by jury and found guilty as charged. On February 27, 2007, the trial court denied a Motion for New Trial and sentenced Johnson to a mandatory life sentence. Johnson then timely filed the present appeal.

STATEMENT OF FACT

Trial testimony of Darrion Woods

At the time of trial, Darrion Woods was ten years old. She identified Johnson as the defendant in this case. She knew him as “Buddy”.
On the evening in question Darrion was sleeping with her mother. Her mother heard a noise and got up “to get something, so he came in the house.” Darrion’s mother did not make it to the bedroom door before Johnson entered. He was carrying a bucket of liquid, which he poured on Darrion’s mother. Johnson then lit Darrion’s mother on fire in front of her. Darrion and her mother ran out of their *328 bedroom and into their television room, where the front door was.
Darrion caught fire too. Johnson picked her up and took her outside. Johnson then took Darrion to her aunt’s house.
Darrion hypothesized that Johnson burned her mother because they argued. The two had been involved in an argument the night before the attack. Johnson and Darrion’s mother were married, but Johnson had lived away from the home for an undetermined time. The argument had been about Johnson’s desire to return home.
Darrion suffered burn injuries to her face and hands. She will continue annual treatment at Shriner’s Hospital in Galveston, Texas until she is twenty-one years old.
|3On cross examination, Darrion testified that she gave a statement to the police after the incident. She recalled telling the police that Johnson had lit the fire with a match.

Trial testimony of Dr. Paul McGarry

At the time of trial, Dr. Paul McGarry had been a forensic pathologist with the Orleans Parish Coroner’s Office for over twenty-five years. The trial court accepted him as an expert in forensic pathology.
Dr. McGarry examined the remains of Agena Woods Johnson, Darrion’s mother. The body “was totally burned black from the top of her head to the soles of her feet.” Much of her skin had been burned completely away, exposing the tissue beneath the skin. The clothing had been burned away.
Ms. Johnson’s muscles and joints had contracted, leaving her hands in fists. Her wrists were sharply bent, her elbows were bent, her arms were in front of her, and her legs were flexed at the hips and knees. Heavy black soot was found around her nose and mouth from breathing in smoke. Her respiratory track — from her nostrils to her lungs — was burned and red. This evidence indicated Ms. Johnson had been breathing in smoke, fire and heat, from her own burning body tissue, resulting in a slow death transpiring over minutes. Eventually, her skin was completely charred, destroying the nerve endings. Ms. Johnson managed to make it to her bathtub. However, Dr. McGarry hypothesized that Ms. Johnson would not have had control over her burning hands due to contracting, preventing her from turning on the water to douse the flames out.

Trial testimony of Deputy Fire Chief Raleigh Paul Richards

Raleigh Paul Richards was a Deputy Fire Chief in the St. Bernard Parish Fire Department in 2001. Deputy Chief Richards professed to be an |4expert in arson investigation. He received training from Louisiana State University and has investigated over one hundred arsons.
Deputy Chief Richards investigated the fire at Agena Johnson’s home in Violet, Louisiana. At trial, Deputy Chief Richards identified pictures of the home. One picture depicted Ms. Johnson’s body in the bathtub of her bathroom, after the fire had been extinguished. The front door to the home was found approximately one foot from where it should be. By examining bricks from the house, Deputy Richards determined that there had been a large explosion fueled by a petrochemical accel-erant. Most of the damage to the house was in the master bedroom and the master bathroom. Deputy Chief Richards wrote a report. This report did not state what accelerant was used.

Trial testimony of Detective Ray Whitfield

At the time of trial, Detective Ray Whitfield was a detective lieutenant with the Criminal Investigations Bureau of the St. Bernard Parish Sheriffs Office. In 2001, *329 he was a sergeant. At that time, he interviewed Johnson and viewed the crime scene.
The offense occurred on October 25, 2001. Det. Whitfield took Johnson’s statement on November 20, 2001. In the interim, Johnson was being treated at a Baton Rouge hospital burn center.
Johnson gave Det. Whitfield a written statement. Det. Whitfield advised Johnson of his rights prior to taking the statement. Johnson also signed a waiver of rights form. Johnson expressed that he had gone to school through the twelfth grade and that he understood his rights. Concerned about bandages on his hands and head, Det. Whitfield also inquired about Johnson’s condition. Johnson said he was willing to go | Rforward with providing a statement. Johnson did not appear to be medicated and did not slur his speech.
In his statement, Johnson related that his wife, Agena Johnson, and he were having some problems and that he left their home. The couple had been married for less than a year. They had attempted reconciliation but Agena would not “have [him] back” and threw him out of their home some two weeks prior to the incident. Johnson stated that he did not know what he was doing. He went to the house, removed a gallon of gasoline from the rear of the yard, filled an open five gallon bucket, entered the house with the bucket, and confronted his wife. When he entered the house, Johnson put the bucket down in the hallway. The bedroom door was open, and he could see Agena walk from the bed to the door. Johnson did not recall what was said. He then picked the bucket up and poured the gasoline “all over” and on her. Johnson turned away and heard a “poof’. Johnson did not recall using a match. Rather, he assumed Agena “may have some candles lit in the bedroom that may have ignited the fire.” Johnson turned back to see the bedroom on fire, and the fire was coming through the hallway. Johnson heard Darrion cry, “Buddy, Buddy!” He was on fire but he returned to get Darrion and took her out of the house. Johnson “started to put out her hair” and took her to her uncle’s house in his truck. Johnson signed his statement and initialed each page. When asked if he wanted to add anything, Johnson noted, “I wasn’t thinking right at the time.” The waiver of rights form and the statement were introduced into the record at trial.
The fire department subsequently found Agena Johnson’s body in the bathtub after the fire had been extinguished. Darrion Johnson was subsequently found at her uncle’s house. She was badly burned.
IfiOn cross examination, Det. Whitfield stated that he was present when Johnson gave his statement. Johnson was in the hospital, receiving treatment for burns he had received in the October 25, 2001 fire. When Det. Whitfield saw Johnson, he had bandages on his hands and head. Several neighbors exited their homes following the explosion and saw someone fitting Johnson’s description pacing back and forth by the house and looking in the windows.

Motions hearing testimony of Detective Ray Whitfield

As part of his investigation, Det. Whitfield interviewed Johnson. Immediately after the incident on October 25, 2001, Johnson had been taken to the Earl K. Long Burn Center in Baton Rouge for treatment. Upon his release, Johnson was taken into custody by the Baton Rouge Police Department. Det. Whitfield and another officer retrieved Johnson from the Baton Rouge Police Department. Det. Whitfield did not recall being given any medication for Johnson. However, Johnson responded affirmatively when asked if he was taking any medication. In spite of *330 that fact, he was able to walk on his own and did not complain of any pain. Johnson had gauze on his head, hands, and fingers. However, he had no problem holding a pen and signing his name without assistance.
A rights form was read to Johnson and he signed it. During the statement, Johnson never requested a break. He never requested any medication or complained of any pain.

ERRORS PATENT

Johnson asks for an errors patent review.
This case was the first murder trial in St. Bernard Parish post Hurricane Katrina. Accordingly, the record is not in pristine condition. The grand jury foreperson’s signature is not present in the record because the indictment in the record does not include the back of the form. La.C.Cr.P. art. 533(5) requires that the foreman of the grand jury sign the form. However, a November 28, 2001 hand written minute entry notes, “Grand Jury returned a ‘True Bill’ this date for ‘Second Degree Murder.’ ” Furthermore, at the motions hearing, the trial court noted that the “Bill of Indictment” was in the record, and defense counsel stipulated that the document in the record was an indictment. At the same proceeding, defense counsel filed a Motion to Quash based upon a speedy trial argument. In doing so, defense counsel noted, in part, “a true bill of indictment that came down, ..., was signed on November 29, 2001.” This Motion to Quash did not attack the indictment itself.
In State v. Poche, 2000-1391 (La.App. 4 Cir. 2/14/01), 780 So.2d 1152, this Court addressed a situation similar to that of the instant case. There, as in the present case, the back of the indictment was not found in the record. This Court held that any defect in the indictment had been waived by the defendant’s failure to file a timely Motion to Quash. Id., p. 5, 780 So.2d at 1155, citing La.C.Cr.P. art. 521 and 535. Here, Johnson did not file any motion to quash challenging the validity of the indictment, namely whether the jury foreman signed it. See La.C.Cr.P. art. 533(5). Thus, assuming there was a defect in the indictment, it was waived by the defendant’s failure to timely object.
| ^DEFENDANT’S ASSIGNMENT OF ERROR
Johnson contends that the trial court erred when it denied his motion to suppress his statement for two reasons: 1) That his statement was inadmissible because he had been arrested without probable cause when he gave it, and 2) that the State failed to show he knowingly and intelligently waived his rights.

I. Probable Cause

In response to Johnson’s contention that he was arrested without probable cause, the State asserts that Johnson failed to preserve his arrest without probable cause argument for appeal, citing La.C.Cr.P. art. 703(F).
La.C.Cr.P. art. 703(F) states in pertinent part that, “[flailure to file a motion to suppress evidence in accordance with this Article prevents the defendant from objecting to its admissibility at the trial on the merits on a ground assertable by a motion to suppress.” Furthermore, “[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence.” La.C.Cr.P. art. 841(A). Accordingly, and a fortiori, failure to raise a ground for suppressing an item of evidence in a properly filed motion to suppress waives such a basis for exclusion on appeal. A defendant cannot object to admission of a statement to an officer based upon lack of probable *331 cause to arrest for the first time on appeal. State v. Lindsey, 404 So.2d 466, 473 (La.1981), citing State v. Duncan, 390 So.2d 859 (La.1980), and State v. Williams, 386 So.2d 1342 (La.1980). See also, State v. McLeod, 03-50 (La.App. 3 Cir. 4/30/03), 843 So.2d 1268.
Accordingly, Johnson has waived the argument that his statement to Det. Whitfield should be suppressed because there was no probable cause for his initial arrest.
| aEven had this claim been preserved, it has no merit, as we find for the following reasons that probable cause existed for the arrest.
In Wong Sun v. U.S., 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the Supreme Court rejected a hard and fast approach to the “fruit of the poisonous tree” exclusionary rule:
We need not hold that all evidence is ‘fruit of the poisonous tree’ simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is ‘whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.’ Maguire, Evidence of Guilt, 221 (1959).
Id., 371 U.S. at 487-488, 83 S.Ct. at 417. Accordingly, the Court determined that the confession of a defendant who had been arrested without probable cause but had voluntarily returned to the police after being released was admissible at trial. Id. at 491, 83 S.Ct. at 419. The Court reasoned that, “the connection between the arrest and the statement had ‘become so attenuated as to dissipate the taint.’ ” Id., citing Nardone v. U.S., 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939).
In Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), the Court revisited Wong Sun to determine whether advising an illegally arrested person of his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), “sufficiently attenuated the taint of the arrest.” Brown, 422 U.S. at 592, 95 S.Ct. at 2256. The Court concluded that Miranda warnings on their own are insufficient to attenuate the taint of an illegal arrest. Brown 422 U.S. at 603, 95 S.Ct. at 2261. Rather, the Court held, “The Miranda warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest.” Id.
| min any event, this Court need not address whether his confession was a proximate result of an illegal arrest because the record shows that he was arrested based upon probable cause.
The record contains no copy of an arrest warrant. Accordingly, it is not known if Johnson was arrested pursuant to an arrest warrant. Had this issue been properly preserved for appeal by being raised before the trial court during the motion to suppress hearing, the record might indicate whether a warrant was ever issued. While there is some evidence in the record that implies that a warrant was issued, as it is not conclusive we shall afford the defendant every benefit of the doubt and assume that none was issued.
La.C.Cr.P. art. 213 concerning warrant-less arrests provides in pertinent part that:
“A peace officer may, without a warrant arrest a person when:
[[Image here]]
(2) The person to be arrested has committed a felony, although not in the presence of the officer;
*332 (3) The peace officer has reasonable cause to believe that the person arrested has committed an offense, although not in the presence of the officer; or
* ⅜ *
La.C.Cr.P. art. 202 concerning the issuance of warrants provides in pertinent part that a magistrate may issue a warrant for arrest where:
A. * * *
(1) * * *
(2) The magistrate has probable cause to believe that an offense was committed and that the person against whom the complaint was made committed it.
_JjjWhether a person is arrested without a warrant or pursuant to a warrant, both La.C.Cr.P. arts. 213 and 202 require “reasonable” or “probable” cause for an arrest. This Court has noted that, “Louisiana jurisprudence treats ‘reasonable cause’ as consonant with the probable cause concept and does not create a different standard. State v. Marks, 337 So.2d 1177, 1182 (La.1976).” State v. Marley, 2006-0317, p. 6, n. 4 (La.App. 4 Cir. 11/8/06), 945 So.2d 808, 812. Accordingly, this Court has also written:
Probable cause to arrest exists when the detaining officer has articulable knowledge of particular facts sufficient to reasonably suspect the detained person of criminal activity. Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Buckley, 426 So.2d 103, 107 (La.1983); see also State v. Parker, 06-0053, p. 2 (La.6/16/06), 931 So.2d 353, 355 (probable cause to arrest exists when the facts and circumstances known to the officer, and of which he has reasonable trustworthy information, are sufficient to justify a man or ordinary caution in believing the person to be arrested has committed an offense).... “The totality of the circumstances, ‘the whole picture,’ must be considered in determining whether reasonable cause exists.” State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984) (quoting U.S. v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).
Id. at pp. 5 and 6, 945 So.2d at 812.
The record contains testimony from Darrion Woods who saw Johnson enter the bedroom where her mother and she were sleeping, splash her mother with a liquid, and light her mother on fire. On cross-examination, Darrion recalled telling the police that Johnson had lit the fire with a match. This testimony provides sufficient information to lead an officer to reasonably believe that Johnson had doused Agena Johnson with a flammable liquid and lit her on fire, providing probable cause his arrest. Accordingly, though Johnson failed to preserve the issue of probable cause for his arrest for appellate review, the record shows that the police possessed probable cause |iafor his arrest before he was placed in Det. Whitfield’s custody.

II. Intelligent Waiver of Rights

Johnson argues that the State did not establish that he knowingly and intelligently waived his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), prior to making his statement to Det. Whitfield. He argues that he was in a mentally diminished state at the time, vitiating his waiver of his rights. The State responds by arguing that Johnson “had ample time to consider his predicament and to seek legal advice before making a statement.” The State also avers that Johnson “offered no testimony to indicate that he was under medi *333 cation at the time he gave his statement.” Neither of these arguments is compelling.
This Court has addressed an allegation of diminished capacity to waive one’s rights pursuant to Miranda by stating the following:
In cases involving allegations of diminished mental capacity, a defendant has the burden of proving the existence of any mental abnormality that might render his confession per se involuntary. State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272, 279. However, although the defendant bears the burden of proving the existence of any mental abnormality which might render his confession per se involuntary, in the absence of such a showing the State retains the ultimate burden of proving beyond a reasonable doubt that the confession was voluntary and obtained pursuant to a knowing and intelligent waiver of the defendant’s constitutional rights. State v. Brooks, 92-3331, p. 12, (La.1/17/95), 648 So.2d 366, 373 (Brooks 2), citing State v. Glover, 343 So.2d 118 (La.1977) (on rehearing).
State v. Raiford, 2003-0098, p. 16 (La.App. 4 Cir. 4/23/03), 846 So.2d 913, 922. Furthermore, voluntariness of a confession is a factual issue. State v. Thornton, 351 So.2d 480, 484 (La.1977). The trial judge’s ruling thereon, |1sbased on conclusions of credibility and weight of the evidence, is entitled to great deference and will not be disturbed on appeal unless clearly unsupported by the evidence in the record. Id.
The only evidence in the record concerning Johnson’s confession is Det. Whitfield’s testimony in the pre-trial motion hearing and at trial. At the motions hearing, Det. Whitfield testified that Johnson responded affirmatively when asked if he was taking any medication. Moreover, Det. Whitfield testified that Johnson had gauze on his hands and fingers when he picked Johnson up in Baton Rouge. Johnson had been treated at a Baton Rouge hospital burn center for injuries.
However, nothing in Johnson’s demean- or indicated a diminished capacity to intelligently waive his rights. Det. Whitfield testified at the motions hearing that Johnson was able to walk on his own and did not complain of any pain. Det. Whitfield also noted that Johnson showed no problems with holding a pen or signing his name.
At trial, Det. Whitfield acknowledged initial concern about Johnson’s physical condition. However, Johnson expressed willingness to provide a statement when asked about his condition. Johnson did not manifest signs of medication or slurred speech when providing his statement. Finally, Det. Whitfield testified that he advised Johnson of his rights and that Johnson signed a waiver of those rights. Under these circumstances, it appears that the trial court’s finding that Johnson’s statement was admissible at trial meets the standard prescribed by Thornton, supra, i.e., it is not clearly unsupported by the evidence in the record. Though Johnson had been treated for serious burn injuries and received medication, the record does not controvert the trial court’s implicit finding that Johnson was not so incapacitated by his injuries and subsequent treatment at the time he met luwith Det. Whitfield that he was unable to knowingly and intelligently waive his Miranda rights and provide a statement.
For the foregoing reason, the defendant’s conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.