JAMES F. MCKAY III, CHIEF JUDGE
*674 STATEMENT OF CASE
The defendant, Dan Pittman, appeals the judgment of the district court, finding him guilty of ten counts of possession of pornography involving juveniles in violation of La. R.S. 14:81.1. For the reasons that follow, we affirm his conviction and sentence.
On February 5, 2016, the State filed a bill of information charging defendant, Dan C. Pittman, with eighty-four counts of illegal possession of pornography involving juveniles under the age of thirteen when the offender is seventeen years of age or older, violations of La. R.S. 14:81.1(E)(5)(a). On February 23, 2016, the defendant appeared for arraignment and entered a plea of not guilty on all counts.
On March 14, 2016, the defendant filed an omnibus motion for inter alia, suppression of statements and for a preliminary examination. The court held hearings on defendant's motions on April 20, 2017, and May 26, 2017, and denied the defendant's suppression motion and found probable cause on only ten of the charges. The defendant waived his right to a trial by jury and elected to have a judge trial on June 12, 2017. On February 5, 2018, the State tried the defendant on the first twenty counts contained in the bill of information. The same day, the court found defendant guilty on ten counts and not guilty on ten counts.[1]
On March 6, 2018, the State entered a nolle prosequi on each of the sixty-four remaining charges contained in the bill of information. On the same date, the defendant filed motions for a new trial and post-verdict judgment of acquittal, which the court denied. The defendant also filed a motion for a downward departure from the statutory minimum sentence, which pursuant to La. R.S.14:81.1 is ten to forty years, arguing that this defendant was exceptional. After reviewing the transcript of the March 6, 2018 sentencing hearing, although the matter was argued, the court failed to grant or deny the motion on the record. Instead, the court proceeded to sentence the defendant to thirteen years on each count of the ten counts for which the defendant was found guilty to run concurrently. By immediately sentencing the defendant, the court implicitly denied the defendant's motion for downward departure from the statutory minimum.
Immediately after sentencing, counsel for the defendant expressed an objection; the basis for this objection is unclear. Despite entering this contemporaneous objection, the defendant failed to seek review in this appeal of his sentence and the denial of his motion for downward departure from minimum sentence. Therefore, although the defendant arguably presented a plausible argument for a downward departure from the statutory minimum sentence, and we consider his sentence to be harsh under the facts of this case, we are unable to address those issues on appeal.
STATEMENT OF FACT
Louis Ratcliff testified that he was employed as "an investigator with the Louisiana Attorney General's Office, Cyber Crime Unit" in March of 2015, and assigned *675 to investigate child exploitation and human trafficking.[2] One such investigation led to the arrest of the defendant for "possession/uploading child pornographic images to the internet, a Twitter account." Detective Ratcliff further testified that Twitter had reported to the National Center for Missing and Exploited Children ("NCMEC") that one of its users had uploaded child pornography and that the internet protocol ("IP") address was determined to have come from Louisiana. The complaint contained approximately eighty images, discovered in multiple folders, of children aged eight to twelve posing nude and performing sexual acts. The folders also contained images of bestiality and animated representations of child pornography.
In response to a subpoena, AT & T was able to determine from the Twitter user's login information and IP addresses associated with the uploads that the account belonged to the defendant. Detective Ratcliff testified that he applied for a search warrant and began surveilling defendant's home located on Arts Street in New Orleans. On September 9, 2015, Detective Ratcliff executed the search warrant accompanied by several federal agents and Louisiana police officers. He observed two individuals sitting on the front porch and learned that they were the defendant's aunt and uncle and that they owned the home. They told the officers that the defendant was at the Delgado college campus in Gretna, and they directed the officers to the defendant's bedroom. Once the defendant returned to the residence (accompanied by police officers), he signed a waiver of rights form and agreed to speak to the investigators.
On cross-examination, Detective Ratcliff testified that the defendant was cooperative with the investigation and provided his passcodes to a "Red Eagle cell phone." The defendant initially told the investigators during the search that he was not aware of any child pornography located on any of his electronic equipment, but stated that he downloaded several large "zip files" containing hundreds of various pornographic images which included adult, animal, and "hentai" pornography[3] . The defendant admitted that he observed several child pornographic photos among the various images but he explained to the officers that he began to delete them if and when he came across them. He subsequently admitted, however, that, at some point, he stopped deleting the child pornography.
Detective Ratcliff testified that he did not perform a search of the defendant's computer to determine what, if any, specific search terms the defendant used when searching for internet pornography. He also admitted that a search of two of the defendant's laptop computers and two external hard drives, as well as a box of CDs and DVDs, revealed no child pornographic files. The only child pornographic images recovered during the search were located on the defendant's "Evo" cell phone. On re-direct examination, Detective Ratcliff confirmed that the defendant had admitted he was aware that he was in possession of several images containing child pornography, that he knew it was illegal to possess them, and that he chose not to delete them.
*676 Thomas Ferguson testified that he was employed with the Louisiana Attorney General's Office in September and October of 2015, and was stipulated as an expert in computer forensics. Mr. Ferguson testified that he analyzed the defendant's laptops, hard drives and cell phones, and discovered twenty images of what he believed was "pornography involving juveniles" on one of the defendant's cell phones. In his report, Mr. Ferguson indicated that he discovered images number one, and numbers three through twenty on a Secured Digital ("SD") memory card (that had been inside the cell phone) in a folder labeled "pictures," under a sub-heading labeled "Twitter." He located image number two on the same SD card in a folder labeled "downloads." He further testified that files twelve and eighteen were photographs of the same child, who had been positively identified as a NCMEC victim, and had been flagged by Twitter in their initial complaint. Each of the illegal files appeared to have been created on separate dates ranging from January to February of 2015.[4]
Mr. Ferguson testified that he performed an analysis of the Twitter account associated with defendant's IP address and user login information and discovered a conversation with another Twitter user which discussed shared "interests" and exchanged photographs.[5] Among the photos the defendant contributed were images number nineteen and one that had been flagged by Twitter as an NCMEC victim under the age of thirteen. In exchange, he received a photo of a nude "young male." Mr. Ferguson also testified that, according to Twitter's records, the Twitter account associated with the defendant's IP address had been opened on December 31, 2014, which coincided with the earliest dated pornographic images discovered in the "Twitter" folder on the SD memory card discovered in the defendant's cell phone.
Mr. Ferguson testified that he sent the twenty images of suspected child pornography discovered on the defendant's cell phone to NCMEC for identification purposes. NCMEC was able to positively identify victims under the age of thirteen in ten of the recovered images. Mr. Ferguson stated it was his expert opinion that, although the identities of the others in the remaining ten photographs were unknown, he was confident that they were also of children under the age of thirteen. According to Mr. Ferguson, a remote user could have potentially hacked into a defendant's twitter account; however, it would have been unlikely that a remote user would have the same IP address as the defendant when utilizing the account, nor would a remote user have access to the photographs contained on the defendant's personal cell phone to upload them into the account.
On cross-examination, Mr. Ferguson admitted that the defendant's two hard drives, two laptops and box of CDs and DVDs which he examined did not contain any images of suspected child pornography, and a review of the defendant's internet history revealed no specific searches for child pornography. He also stated that the SD memory card that contained the twenty images of children also contained over 500 pornographic images that did not involve children. On redirect examination, Mr. Ferguson testified his analysis of the defendant's other electronic equipment *677 (hard drives and laptops) appeared to contain many pornographic photographs involving minors, but he had not flagged them because they did not appear to Mr. Ferguson to have been under the age of thirteen. He also had not flagged the animated representations of child pornography.
In the defendant's case-in-chief, the defendant testified on his own behalf. He stated that he was taking welding classes at Delgado when the police arrested him on September 9, 2015. He denied that he ever "intentionally...purposefully...[or] deliberately" possessed any child pornography. He admitted that he did search for bestiality and animated pornography he called "hantai," but insisted he only searched for animated representations of adults, not children. The defendant testified that he would search for "anime," "bukkake," and "hentai," and would download large zip files containing thousands of pornographic images, but did not intend to possess the images of child pornography also contained therein. He explained that when he browsed through the zip folders, the files were labeled numerically and he could not see the images unless he opened each file individually.
The defendant recalled telling the investigating officers that he was aware that he had possessed images of child pornography, but that he had been deleting them because he "did not want them on [his] device" or "be associated with that." He further explained that he would manually transfer the downloaded images from his computer to his cell phone, but that somehow he apparently carelessly/accidentally included the child pornography with the manual transfers of the other files, notwithstanding his claimed belief that he had successfully deleted all of the files depicting child pornography.
The defendant testified that he had created two Twitter accounts, although he guessed that the reason one had been blocked was because he uploaded bestiality. He denied that he had ever engaged in conversations with other Twitter users, and denied having knowledge of the private exchange of child pornography with another Twitter user that the State had earlier alleged.
On cross-examination, the defendant acknowledged that he possessed animated images of children (depicted as young as five) being "gang-raped," but explained that nobody had been harmed because they were merely drawings. The defendant also claimed that his stepson, who was apparently incarcerated in Pennsylvania at the time the child pornography was uploaded, had access to his Twitter account. The defendant acknowledged that the pornographic images containing human children had been downloaded on different dates: that they were not all included in one large zip file. The defendant further admitted that he had, in fact, uploaded two large files onto Twitter that contained "zoo porn," and agreed that the private messages sent from his account described the sender as a thirty-eight-year-old black man, which the defendant evidently was at the time. The defendant also could not explain how the same (illegal) images of children that investigators discovered on a memory card in his cell phone were also discovered uploaded onto his personal Twitter account, as he maintained that he had not been the sender of the flagged images.
On redirect examination, the defendant testified that he told the investigators that he stopped deleting the child pornographic images because there were too many files in the zip folders to scan thoroughly, and he "felt like [he] had deleted the majority of stuff that was inappropriate."
*678 ERRORS PATENT
Although it does not appear in the minutes or the docket master, the transcript reflects that the defendant waived the sentencing delays after filing motions for a new trial and a post-verdict judgment of acquittal.
THE STATE: I would ask that we put on the record that defense waived delays for the sentencing.
COURT: I was about to say that.
DEFENSE: Yes, Your Honor, I would waive delays or did waive delays for sentencing when we began the hearing.
COURT: Sentencing delay is waived.
A review of the record reveals that the sentence the court imposed was illegally lenient. The court sentenced the defendant to serve thirteen years imprisonment at hard labor on each of the ten counts for which he was convicted with sentences to run concurrently, but omitted the requirement that the sentence "be served without benefit of parole, probation, or suspension of sentence." La. R.S. 14:81.1(E)(5)(a). Nevertheless,
This Court has recognized that "paragraph A of La. R.S. 15:301.1 provides that in instances where the statutory restrictions are not recited at sentencing, they are contained in the sentence, whether or not imposed by the sentencing court." State v. Wyatt, 2011-0219, p. 20 (La. App. 4 Cir. 12/22/11), 83 So.3d 131, 143 (citing State v. Williams, 20001725 (La. 11/28/01), 800 So.2d 790 ). Accordingly, "this Court need take no action to correct the trial court's failure to specify that the defendant's sentences be served without benefit of parole, probation or suspension of sentence" because it is statutorily effected. State v. Wyatt, 2011-0219, p. 20, 83 So.3d at 143 (citing La. R.S. 15:301.1(A) ).
State v. Dominick, 2013-0270, pp. 3-4 (La. App. 4 Cir. 1/30/14), 133 So.3d 250, 252. Thus, this Court is not required to take any action as this error is statutorily self-correcting.
DISCUSSION
ASSIGNMENT OF ERROR
The defendant asserts that "the State failed to associate any counts with any specific conduct, either in the bill of information or at trial," and that "the court failed to specify on which counts it found [defendant] guilty and on which it acquitted." Because the State tried the defendant on only twenty of the eighty-four counts with which he was initially charged, and because the court's verdict was simply, "Guilty as charged on ten counts. Not guilty on the remaining counts," it is "impossible" to know for what conduct the defendant is being punished and for what conduct he was acquitted. As such, the defendant argues, the verdict violates due process and cannot stand, and the defendant cannot be tried again on the chance that he may be convicted for conduct of which he was already acquitted.
In support of the defendant's assertions, he cites only one case: People v. Archer, 238 A.D.2d 183, 656 N.Y.S.2d 237 (N.Y. App. Div. 1997), in which the defendant was tried on, inter alia , three counts of criminal possession of a weapon in the third degree; but the jury convicted on only one count, and acquitted the defendant on the other two. The Court[6] reversed the defendant's conviction, holding that, because the charges "in the indictment were identical and did not specify which gun, of the three recovered by the police at or shortly after the defendant's *679 arrest, pertained to which count," and because the jury instructions "failed to assign a specific gun to a specific count," notwithstanding the State's request for the specific instruction, it was "impossible to conclude from [the] verdict which of the three guns defendant was convicted of possessing, and it [could not] be determined whether all 12 members of the jury voted to convict him of possessing the same gun." The Court then dismissed the weapons charges, "since a remand could [have led] to retrying defendant on one of the two charges for which he was previously acquitted." Id., at 183-84, 656 N.Y.S.2d at 238-39.
The State in this case, argues that the defendant failed to preserve the issue for review, as he lodged no objection at any time following the verdict or imposition of sentence, and did not assert the issue in either his motion for a new trial or for a post-verdict judgment of acquittal.[7]
La. C.Cr.P. art. 841 provides:
A. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
B. The requirement of an objection shall not apply to the court's ruling on any written motion.
A contemporaneous objection is required for two purposes: (1) to put the trial court on notice of the alleged irregularity or error, so that the trial judge can cure the error, and (2) to prevent a defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by objection. State v. Lanclos, 2007-0082, p. 6 (La. 4/8/08), 980 So.2d 643, 648 ; State v. Le, 2017-0164, p. 18 (La. App. 4 Cir. 4/11/18), 243 So.3d 637, 656.
Moreover, the defendant also chose not to file a motion for a bill of particulars which would have compelled the State to set forth "more specifically the nature and cause of the charges against defendant:" information defendant now complains is "impossible" to determine. La. C.Cr.P. art. 484. If the defendant believed the bill of information was defective, he could have asked the court to order the State to amend the information, or, after trial began, could have moved for a mistrial under La. C.Cr.P. art. 487.
"The time for testing the sufficiency of an indictment is before trial by way of a motion to quash or an application for a bill of particulars." State v. Reel, 10-1737, p. 9 (La. App. 4 Cir. 10/3/12), 126 So.3d 506, 514 (citing State v. Gainey, 376 So.2d 1240, 1243 (La. 1979). It is well-settled in Louisiana that "[a] post-verdict attack on the sufficiency of an indictment does not provide grounds for setting aside a conviction unless the indictment failed to give fair notice of the offense charged or failed to set forth any identifiable offense." State v. Cavazos, 610 So.2d 127, 128 (La. 1992) ; see State v. Phillips, 10-0582, p. 10 (La. App. 4 Cir. 2/17/11), 61 So.3d 130, 137 ; State v. Page, 08-531, p. 16 (La. App. 5 Cir. 11/10/09), 28 So.3d 442, 452 ; State v. Johnson, 07-1040, p. 7 (La. App. 4 Cir. 9/10/08), 993 So.2d 326, 330.
*680 State v. Brazell, 2017-0032, p. 12 (La. App. 4 Cir. 4/18/18), 245 So.3d 15, 28.
In the instant case, the bill of information charged the defendant with eighty-four identical counts which stated that between March 31, 2015 and September 9, 2015, the defendant violated "[La.] R.S. 14:81.1, in that the said Dan C. Pittman possessed various photographs, films, video tapes, or the visual reproductions of sexual performances where victim is under the age of thirteen and Dan C. Pittman is seventeen or older." At the start of trial, the State indicated that it was only "proceeding on counts one through twenty," and confirmed it had discussed the charges with the defendant. It does not appear from the record that the defendant, at any time before, during, or after trial, informed the district court that he was unaware of the conduct for which he was being charged or tried, nor did he indicate at any time to the district court that he could not determine the counts for which he had been convicted or acquitted, notwithstanding his numerous opportunities to have done so.
Although the defendant now complains of the alleged error on appeal, a thorough review of the entire record reveals that the defendant may have chosen not to bring this issue to the trial court's attention at any time because he was not, in fact, unaware of the conduct for which he was being charged or tried, and that it was not, in fact, impossible to determine exactly what conduct related to the charges for which the defendant was convicted.
At the hearing on the defendant's motion to suppress his statements, Detective Ratcliff testified that he discovered a cell phone during the search of the defendant's residence that contained ten pornographic images of female children aged eight to twelve, which defense counsel confirmed several times during cross-examination:
DEFENSE: And so it would be your understanding that the ten images that remained on [defendant's] cell phone, were those ten images that he did not [delete]?
WITNESS: Correct.
* * * * * *
DEFENSE: Okay. And so I know we were having conversations earlier about the number of counts that [defendant] is charged with. Today, you are here testifying specifically about ten images that you recovered from [defendant's] cell phone- (State's objection is overruled)- So your testimony today is about the ten images that you found on [defendant's] cell phone?
WITNESS: Correct.
DEFENSE: And you charged- you only wrote an affidavit, or maybe charged, as an officer, [defendant] with only ten counts, not eighty? (State's objection is overruled)
WITNESS: Yes.
Moreover, at the defendant's subsequent probable cause hearing, defense counsel summarized his appreciation of the conduct underlying the counts charged as follows:
Your Honor, if you recall, when Investigator Ratcliff testified at the motion hearing on April 20, he identified that the images recovered-he recovered about ten images from [defendant's] cell phone. However, with respect to the other, I believe, seventy-four images, they were originally uploaded to a Twitter account, a Twitter file. Investigator Ratcliff was unable to confirm, or actually identify, that those images were uploaded by an IP address belonging to [defendant]. Given the fact that the only representation of images in [defendant's] possession were the ones that were actually discovered on the date the *681 search warrant was executed, we ask you to find no probable cause for the Twitter images. And we would like to focus your attention to the images on the cell phone. Specifically, though the information given by Investigator Ratcliff, [defendant] articulated he downloaded a massive file including hundreds of images. Amongst those images, Investigator Ratcliff said there were about ten that were inappropriate and potentially illegal in nature...It became clear through the testimony that amongst the hundreds of images that [defendant] downloaded, only about ten of them were actually in the nature that's alleged today. For those reasons, Your Honor, we ask you to find no probable cause in all counts for [defendant].
At the start of trial, the State indicated that it was proceeding on counts one through twenty and that it had discussed the charges with defense counsel. During its opening statement, the State asserted that a computer forensic expert discovered "twenty photographs of children under the age of thirteen performing sexual acts with adult males." The State further explained,
that ten of the children out of the twenty are, in fact, known victims that were identified by the NCMEC that are confirmed to be under the age of thirteen in the photographs. The remaining ten photographs, Your Honor, I would submit, that by looking at them, you can use your common sense and know that these were very young children. There is not a question of if they are at the brink of thirteen or fourteen; they were very young, five, six years old. And you can see that via looking at the images.
In his motions for a new trial and post-verdict judgment of acquittal, the defendant asserted only that there was insufficient evidence to support the conviction and that the State impermissibly attacked the defendant's character by referring to his crimes as "sick, vile, and despicable." During his oral argument for a downward departure from the statutory minimum sentence at the sentencing hearing, the defendant asserted that he "did not possess an overly voluminous amount of images that are articulated to be illegal in 14:81.1," and differentiated the illegal material from the other images also discovered in his possession. He also asserted that the defendant "has become aware of what is appropriate and what isn't appropriate," because "this trial...has been one that has been informative for him as well as provided him an understanding of what type of behavior is and is not allowed."
In the State's counter-argument, it specified the conduct for which the defendant had been convicted, stating, "The legislature had already contemplated that the sentence is more when a child is under the age of thirteen years old, and Your Honor found that ten of those counts, the ten children who were under the age of thirteen when you rendered your verdict in this case...These were kids in the five-to-seven-year range that we identified through NCMEC."
All parties including the court understood that the ten counts for which the defendant was convicted were for the possession of the ten photographs discovered on his cell phone (that he admitted he knew he possessed) of the children specifically identified by the NCMEC of being under thirteen years old. The ten photos were introduced separately and the NCMEC report confirmed each photo was of a child under the age of thirteen. Thus, this case is distinguishable from Archer in that it is determinable from the record exactly which ten photographs defendant was convicted of possessing, notwithstanding the more general statutory language contained in the first twenty counts in the *682 bill of information. The record supports that the defendant was acquitted of the ten counts charging him with possessing the remaining ten photographs Mr. Ferguson flagged on his cell phone that were NOT identified by the NCMEC as children under the age of thirteen. Consequently, the defendant's complaint that it is "impossible to know what [defendant] has been convicted of," is unsupported by the record and is, therefore, meritless.
CONCLUSION
For the above reasons, the trial court's verdict was not vague and ambiguous such that it was impossible to determine what conduct and evidence the court found proved the defendant's guilt on the ten counts for which he was convicted, and the lack of evidence underlying the remaining counts for which he was acquitted. Accordingly, we affirm the defendant's convictions and sentences.
AFFIRMED

Although the court did not specify on exactly which of the counts it found the defendant guilty and not guilty, the docket master and the minute entries reflect that the court found the defendant not guilty on counts one through ten and guilty on counts eleven through twenty.

At the time of trial, Louis Ratcliff was employed as a detective with the St. Charles Parish Sheriff's Office. He will be referred to as Detective Ratcliff heretofore.

The Oxford Dictionary online defines hentai as a subgenre of the Japanese genre of manga and anime, characterized by overtly sexualized characters and sexually explicit images and plots.

Mr. Ferguson testified that image number two was the only file which did not contain a date stamp.

Mr. Ferguson explained that the conversation was posted by "direct message," (a private conversation between two users) as opposed to a "tweet." (a broadcast in which anyone who follows the account can see).

Supreme Court, Appellate Division, First Division, New York

The Archer court faced the same issue, however it nevertheless chose to consider the error.